# TOUBY ET UX. *v.* UNITED STATES

No. 90–6282.   Argued April 17, 1991—Decided May 20, 1991

O'CONNOR, J., delivered the opinion for a unanimous Court. MAR-
SHALL, J., filed a concurring opinion, in which BLACKMUN, J., joined, *post*,
p. 169.

*Joel I. Klein* argued the cause for petitioners. With
him on the briefs were *Richard G. Taranto* and *Michael E.
Deutsch.*

*Jeffrey P. Minear* argued the cause for the United States.
With him on the brief were *Solicitor General Starr, Assist-
ant Attorney General Mueller, Deputy Solicitor General
Bryson,* and *Richard A. Friedman.*

162

JUSTICE O'CONNOR delivered the opinion of the Court.

Petitioners were convicted of manufacturing and conspiring to manufacture "Euphoria," a drug temporarily designated as a schedule I controlled substance pursuant to § 201(h) of the Controlled Substances Act, 98 Stat. 2071, 21 U. S. C. § 811(h). We consider whether § 201(h) unconstitutionally delegates legislative power to the Attorney General and whether the Attorney General's subdelegation to the Drug Enforcement Administration (DEA) was authorized by statute.

I

In 1970, Congress enacted the Controlled Substances Act (Act), 84 Stat. 1242, as amended, 21 U. S. C. § 801 *et seq.* The Act establishes five categories or "schedules" of controlled substances, the manufacture, possession, and distribution of which the Act regulates or prohibits. Violations involving schedule I substances carry the most severe penalties, as these substances are believed to pose the most serious threat to public safety. Relevant here, § 201(a) of the Act authorizes the Attorney General to add or remove substances, or to move a substance from one schedule to another. § 201(a), 21 U. S. C. § 811(a).

When adding a substance to a schedule, the Attorney General must follow specified procedures. First, the Attorney General must request a scientific and medical evaluation from the Secretary of Health and Human Services (HHS), together with a recommendation as to whether the substance should be controlled. A substance cannot be scheduled if the Secretary recommends against it. § 201(b), 21 U. S. C. § 811(b). Second, the Attorney General must consider eight factors with respect to the substance, including its potential for abuse, scientific evidence of its pharmacological effect, its psychic or physiological dependence liability, and whether the substance is an immediate precursor of a substance already controlled. § 201(c), 21 U. S. C. § 811(c). Third, the Attorney General must comply with the notice-and-hearing

provisions of the Administrative Procedure Act (APA), 5 U. S. C. §§ 551–559, which permit comment by interested parties. § 201(a), 21 U. S. C. § 811(a). In addition, the Act permits any aggrieved person to challenge the scheduling of a substance by the Attorney General in a court of appeals. § 507, 21 U. S. C. § 877.

It takes time to comply with these procedural requirements. From the time when law enforcement officials identify a dangerous new drug, it typically takes 6 to 12 months to add it to one of the schedules. S. Rep. No. 98–225, p. 264 (1984). Drug traffickers were able to take advantage of this time gap by designing drugs that were similar in pharmacological effect to scheduled substances but differed slightly in chemical composition, so that existing schedules did not apply to them. These "designer drugs" were developed and widely marketed long before the Government was able to schedule them and initiate prosecutions. See ibid.

To combat the "designer drug" problem, Congress in 1984 amended the Act to create an expedited procedure by which the Attorney General can schedule a substance on a temporary basis when doing so is "necessary to avoid an imminent hazard to the public safety." § 201(h), 21 U. S. C. § 811(h). Temporary scheduling under § 201(h) allows the Attorney General to bypass, for a limited time, several of the requirements for permanent scheduling. The Attorney General need consider only three of the eight factors required for permanent scheduling. § 201(h)(3), 21 U. S. C. § 811(h)(3). Rather than comply with the APA notice-and-hearing provisions, the Attorney General need provide only a 30-day notice of the proposed scheduling in the Federal Register. § 201(h)(1), 21 U. S. C. § 811(h)(1). Notice also must be transmitted to the Secretary of HHS, but the Secretary's prior approval of a proposed scheduling order is not required. See § 201(h)(4), 21 U. S. C. § 811(h)(4). Finally, § 201(h)(6), 21 U. S. C. § 811(h)(6), provides that an order to schedule a substance temporarily "is not subject to judicial review."

Because it has fewer procedural requirements, temporary scheduling enables the Government to respond more quickly to the threat posed by dangerous new drugs. A temporary scheduling order can be issued 30 days after a new drug is identified, and the order remains valid for one year. During this 1-year period, the Attorney General presumably will initiate the permanent scheduling process, in which case the temporary scheduling order remains valid for an additional six months. § 201(h)(2), 21 U. S. C. § 811(h)(2).

The Attorney General promulgated regulations delegating to the DEA his powers under the Act, including the power to schedule controlled substances on a temporary basis. See 28 CFR § 0.100(b) (1990). Pursuant to that delegation, the DEA Administrator issued an order scheduling temporarily 4-methylaminorex, known more commonly as "Euphoria," as a schedule I controlled substance. 52 Fed. Reg. 38225 (1987). The Administrator subsequently initiated formal rulemaking procedures, following which Euphoria was added permanently to schedule I.

While the temporary scheduling order was in effect, DEA agents, executing a valid search warrant, discovered a fully operational drug laboratory in Daniel and Lyrissa Touby's home. The Toubys were indicted for manufacturing and conspiring to manufacture Euphoria. They moved to dismiss the indictment on the grounds that § 201(h) unconstitutionally delegates legislative power to the Attorney General, and that the Attorney General improperly delegated his temporary scheduling authority to the DEA. The United States District Court for the District of New Jersey denied the motion to dismiss, 710 F. Supp. 551 (1989); and the Court of Appeals for the Third Circuit affirmed petitioners' subsequent convictions, 909 F. 2d 759 (1990). We granted certiorari, 498 U. S. 1046 (1991), and now affirm.

II

The Constitution provides that "[a]ll legislative Powers herein granted shall be vested in a Congress of the United

States." U. S. Const., Art. I, § 1. From this language the Court has derived the nondelegation doctrine: that Congress may not constitutionally delegate its legislative power to another branch of Government. "The nondelegation doctrine is rooted in the principle of separation of powers that underlies our tripartite system of Government." *Mistretta* v. *United States*, 488 U. S. 361, 371 (1989).

We have long recognized that the nondelegation doctrine does not prevent Congress from seeking assistance, within proper limits, from its coordinate Branches. *Id.*, at 372. Thus, Congress does not violate the Constitution merely because it legislates in broad terms, leaving a certain degree of discretion to executive or judicial actors. So long as Congress "lay[s] down by legislative act an intelligible principle to which the person or body authorized to [act] is directed to conform, such legislative action is not a forbidden delegation of legislative power." *J. W. Hampton, Jr., & Co.* v. *United States*, 276 U. S. 394, 409 (1928).

Petitioners wisely concede that Congress has set forth in § 201(h) an "intelligible principle" to constrain the Attorney General's discretion to schedule controlled substances on a temporary basis. We have upheld as providing sufficient guidance statutes authorizing the War Department to recover "excessive profits" earned on military contracts, see *Lichter* v. *United States*, 334 U. S. 742, 778–786 (1948); authorizing the Price Administrator to fix "fair and equitable" commodities prices, see *Yakus* v. *United States*, 321 U. S. 414, 426–427 (1944); and authorizing the Federal Communications Commission to regulate broadcast licensing in the "public interest," see *National Broadcasting Co.* v. *United States*, 319 U. S. 190, 225–226 (1943). In light of these precedents, one cannot plausibly argue that § 201(h)'s "imminent hazard to the public safety" standard is not an intelligible principle.

Petitioners suggest, however, that something more than an "intelligible principle" is required when Congress authorizes another Branch to promulgate regulations that con-

template criminal sanctions. They contend that regulations of this sort pose a heightened risk to individual liberty and that Congress must therefore provide more specific guidance. Our cases are not entirely clear as to whether more specific guidance is in fact required. Compare *Fahey* v. *Mallonee*, 332 U. S. 245, 249–250 (1947), cited in *Mistretta, supra,* at 373, n. 7, with *Yakus, supra,* at 423–427, and *United States* v. *Grimaud,* 220 U. S. 506, 518, 521 (1911). We need not resolve the issue today. We conclude that § 201(h) passes muster even if greater congressional specificity is required in the criminal context.

Although it features fewer procedural requirements than the permanent scheduling statute, § 201(h) meaningfully constrains the Attorney General's discretion to define criminal conduct. To schedule a drug temporarily, the Attorney General must find that doing so is "necessary to avoid an imminent hazard to the public safety." § 201(h)(1), 21 U. S. C. § 811(h)(1). In making this determination, he is "required to consider" three factors: the drug's "history and current pattern of abuse"; "[t]he scope, duration, and significance of abuse"; and "[w]hat, if any, risk there is to the public health." §§ 201(c)(4)–(6), 201(h)(3), 21 U. S. C. §§ 811(c)(4)–(6), 811(h)(3). Included within these factors are three other factors on which the statute places a special emphasis: "actual abuse, diversion from legitimate channels, and clandestine importation, manufacture, or distribution." § 201(h)(3), 21 U. S. C. § 811(h)(3). The Attorney General also must publish 30-day notice of the proposed scheduling in the Federal Register, transmit notice to the Secretary of HHS, and "take into consideration any comments submitted by the Secretary in response." §§ 201(h)(1), 201(h)(4), 21 U. S. C. §§ 811(h)(1), 811(h)(4).

In addition to satisfying the numerous requirements of § 201(h), the Attorney General must satisfy the requirements of § 202(b), 21 U. S. C. § 812(b). This section identifies the criteria for adding a substance to each of the five schedules.

As the United States acknowledges in its brief, § 202(b) speaks in mandatory terms, drawing no distinction between permanent and temporary scheduling. With exceptions not pertinent here, it states that "a drug or other substance may not be placed in any schedule unless the findings required for such schedule are made with respect to such drug or other substance." § 202(b), 21 U. S. C. § 812(b). Thus, apart from the "imminent hazard" determination required by § 201(h), the Attorney General, if he wishes to add temporarily a drug to schedule I, must find that it "has a high potential for abuse," that it "has no currently accepted medical use in treatment in the United States," and that "[t]here is a lack of accepted safety for use of the drug . . . under medical supervision." § 202(b)(1), 21 U. S. C. § 812(b)(1).

It is clear that in §§ 201(h) and 202(b) Congress has placed multiple specific restrictions on the Attorney General's discretion to define criminal conduct. These restrictions satisfy the constitutional requirements of the nondelegation doctrine.

Petitioners point to two other aspects of the temporary scheduling statute that allegedly render it unconstitutional. They argue first that it concentrates too much power in the Attorney General. Petitioners concede that Congress may legitimately authorize someone in the Executive Branch to schedule drugs temporarily, but argue that it must be someone other than the Attorney General because he wields the power to prosecute crimes. They insist that allowing the Attorney General both to schedule a particular drug and to prosecute those who manufacture that drug violates the principle of separation of powers. Petitioners do not object to the permanent scheduling statute, however, because it gives "veto power" to the Secretary of HHS. Brief for Petitioners 20.

This argument has no basis in our separation-of-powers jurisprudence. The principle of separation of powers focuses on the distribution of powers *among* the three coequal

Branches, see *Mistretta*, 488 U. S., at 382; it does not speak to the manner in which authority is parceled out within a single Branch. The Constitution vests all executive power in the President, U. S. Const., Art. II, § 1, and it is the President to whom both the Secretary and the Attorney General report. Petitioners' argument that temporary scheduling authority should have been vested in one executive officer rather than another does not implicate separation-of-powers concerns; it merely challenges the wisdom of a legitimate policy judgment made by Congress.

Petitioners next argue that the temporary scheduling statute is unconstitutional because it bars judicial review. They explain that the purpose of requiring an "intelligible principle" is to permit a court to "'ascertain whether the will of Congress has been obeyed.'" *Skinner* v. *Mid-America Pipeline Co.*, 490 U. S. 212, 218 (1989), quoting *Yakus, supra*, at 426. By providing that a temporary scheduling order "is not subject to judicial review," § 201(h)(6), the Act purportedly violates the nondelegation doctrine.

We reject petitioners' argument. Although § 201(h)(6), 21 U. S. C. § 811(h)(6), states that a temporary scheduling order "is not subject to judicial review," another section of the Act plainly authorizes judicial review of a permanent scheduling order. See § 507, 21 U. S. C. § 877. Thus, the effect of § 201(h)(6) is merely to postpone legal challenges to a scheduling order for up to 18 months, until the administrative process has run its course. This is consistent with Congress' express desire to permit the Government to respond quickly to the appearance in the market of dangerous new drugs. Even before a permanent scheduling order is entered, judicial review is possible under certain circumstances. The United States contends, and we agree, that § 201(h)(6) does not preclude an individual facing criminal charges from bringing a challenge to a temporary scheduling order as a defense to prosecution. See Brief for United States 34–36. This is sufficient to permit a court to "'ascertain whether the will of

Congress has been obeyed.'" *Skinner, supra,* at 218, quoting *Yakus,* 321 U. S., at 426. Under these circumstances, the nondelegation doctrine does not require, in addition, an opportunity for preenforcement review of administrative determinations.

### III

Having concluded that Congress did not unconstitutionally delegate legislative power to the Attorney General, we consider petitioners' claim that the Attorney General improperly delegated his temporary scheduling power to the DEA. Petitioners insist that delegation within the Executive Branch is permitted only to the extent authorized by Congress, and that Congress did not authorize the delegation of temporary scheduling power from the Attorney General to the DEA.

We disagree. Section 501(a) of the Act states plainly that "[t]he Attorney General may delegate any of his functions under [the Controlled Substances Act] to any officer or employee of the Department of Justice." 21 U. S. C. § 871(a). We have interpreted § 501(a) to permit the delegation of any function vested in the Attorney General under the Act unless a specific limitation on that delegation authority appears elsewhere in the statute. See *United States* v. *Giordano,* 416 U. S. 505, 512–514 (1974). No such limitation appears with regard to the Attorney General's power to schedule drugs temporarily under § 201(h).

The judgment of the Court of Appeals is

*Affirmed.*

JUSTICE MARSHALL, with whom JUSTICE BLACKMUN joins, concurring.

I join the Court's opinion but write separately to emphasize two points underlying my vote. The first is my conclusion that the opportunity of a defendant to challenge the substance of a temporary scheduling order in the course of a criminal prosecution is essential to the result in this case. Section 811(h)(6) of Title 21 U. S. C. expressly prohibits di-

rect review of a temporary scheduling order in the Court of Appeals but says nothing about judicial review of such an order in other settings. Under established rules of construction, we must presume from Congress' silence on the matter that it did *not* intend to foreclose review in the enforcement context. See *Estep* v. *United States*, 327 U. S. 114, 120–122 (1946). See generally *McNary* v. *Haitian Refugee Center, Inc.*, 498 U. S. 479, 496 (1991); *Abbott Laboratories* v. *Gardner*, 387 U. S. 136, 140–141 (1967). An additional consideration reinforces this principle here. As the Court notes, judicial review perfects a delegated-lawmaking scheme by assuring that the exercise of such power remains within statutory bounds. See, *e. g.*, *Skinner* v. *Mid-America Pipeline Co.*, 490 U. S. 212, 218–219 (1989). Because of the severe impact of criminal laws on individual liberty, I believe that an opportunity to challenge a delegated lawmaker's compliance with congressional directives is a constitutional necessity when administrative standards are enforced by criminal law. Cf. *United States* v. *Mendoza-Lopez*, 481 U. S. 828, 837–839 (1987); Hart, The Power of Congress to Limit the Jurisdiction of Federal Courts: An Exercise in Dialectic, 66 Harv. L. Rev. 1362, 1379–1383 (1953). We must therefore read the Controlled Substances Act as preserving judicial review of a temporary scheduling order in the course of a criminal prosecution in order to save the Act's delegation of lawmaking power from unconstitutionality. Cf. *Webster* v. *Doe*, 486 U. S. 592, 603–604 (1988).

The second point that I wish to emphasize is my understanding of the breadth of the Court's constitutional holding. I agree that the separation of powers doctrine relates only to the allocation of power *between* the Branches, not the allocation of power *within* a single Branch. But this conclusion by no means suggests that the Constitution as a whole is indifferent to how permissibly delegated powers are distributed within the Executive Branch. In particular, the Due Process Clause limits the extent to which prosecutorial and

other functions may be combined in a single actor. See, *e. g.*, *Morrissey* v. *Brewer*, 408 U. S. 471, 485–487 (1972). Petitioners raise no due process challenge in this case, and I do not understand anything in today's decision as detracting from the teachings of our due process jurisprudence generally.