65 F.3d 169
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
UNITED STATES, Plaintiff-Appellee,
v.
Douglas HOOPER, Defendant-Appellant.
 No. 94-1912.
 United States Court of Appeals, Sixth Circuit.
 Aug. 29, 1995.
 
 Before: MARTIN, GUY, and DAUGHTREY, Circuit Judges.
 PER CURIAM.
 
 
 1
 Arguing that the Double Jeopardy clause barred his prosecution, Douglas Hooper appeals his conviction and sentence on drug possession charges. He also challenges the district court's decision to increase his offense level for being a leader of a criminal activity and for obstruction of justice. Hooper claims further error by asserting that the district court erred in finding methcathinone a Schedule I controlled substance. Finally, although acknowledging that the record is inadequate for appellate review, Hooper raises a claim of ineffective assistance of counsel. For the following reasons, we AFFIRM the judgment of the district court.
 
 
 2
 In 1991, Hooper was involved in the production of methcathinone, a powdered stimulant analogous to methamphetamine, in Michigan's Upper Peninsula. He introduced Bryan Couch and Quinn Youngberg to the drug by giving them samples. In early 1992, Hooper offered to teach Couch how to make methcathinone for $1,500. Couch testified that he paid $750-$1,000 for the "schooling" and that Hooper then taught him the process. Youngberg testified that Hooper enlisted him to assist him in manufacturing methcathinone and that he helped Hooper make five batches. Although Hooper offered to teach Youngberg how to make methcathinone for $2,000, Youngberg refused and learned to produce the drug by watching Hooper. Youngberg also testified that in 1993 Hooper travelled to Green Bay, Wisconsin to sell him methcathinone.
 
 
 3
 In September 1991, Hooper ordered fifty bottles of ephedrine pills from Nationwide Purveyors; each bottle contained one thousand twenty-five-milligram pills. These bottles were delivered to a fictitious name at Hooper's residence. Ephedrine is a precursor chemical in the production of methcathinone. Similar orders were placed on December 3, 1991, February 4, 1992, as well as March 9 and March 25, 1992. A Custodian of Records at Nationwide Purveyors testified that each order was delivered and paid for COD.
 
 
 4
 On May 12, 1992, Hooper's residence was searched pursuant to a federal search warrant. The executing officers found a locked room containing two five-gallon cans of toluene (a solvent used in the manufacture of methcathinone), a box of forty 1,000 pill ephedrine bottles that had been delivered to Bryan Couch in Wisconsin, empty plastic bottles and baggies of the type used to distribute methcathinone, a triple beam scale, a catalog of chemical supplies, a drug debt sheet, and a safe that contained vehicle titles and personal papers in Hooper's name. A vial containing over sixteen grams of methcathinone was also found. Elsewhere in the house, officers found battery acid, which is also used in the production of methcathinone, as well as two mirrors, a razor blade, and a straw used to ingest methcathinone. Rather than return home after the search, Hooper moved to Crystal Falls, Michigan. In the fall of 1992, Nationwide Purveyors sent sixty-six bottles of Ephedrine to Doug Hooper and an associate, Rocky Farrell, in Crystal Falls.
 
 
 5
 Ed Fiszer testified that in 1991 he obtained methcathinone from Jerry Schoch, who claimed to receive it from Doug Hooper. Schoch also told Fiszer that Hooper taught him how to make methcathinone. Fiszer further testified that Hooper later offered him the recipe and "schooling" for $2,500. In 1992, Fiszer received methcathinone from Hooper's fiancee, Connie Marks, who told Fiszer that Hooper was the source of her methcathinone. She introduced Fiszer to Hooper, and in late 1992 invited him to Crystal Falls to meet Hooper and get methcathinone from him personally. Fiszer made two trips to Crystal Falls and on each visit bought an ounce of methcathinone from Hooper, who in turn made several trips to Fiszer's house. Fiszer testified that on at least one occasion, Hooper intimidated him into buying methcathinone; when Fiszer did not have money to pay for it, Hooper and Marks's brother took some ephedrine and a stereo from Fiszer.
 
 
 6
 On August 24, 1993, a federal grand jury returned a ten-count superseding indictment against Hooper. Five of the counts were for possessing ephedrine on a specific date with intent to manufacture a controlled substance analogue in violation of 21 U.S.C. Secs. 841(d)(1), 813, and 802(32)(A). These represented one count for each shipment of ephedrine from Nationwide Purveyors. The superseding indictment further charged Hooper with possessing ephedrine and toluene with intent to manufacture methcathinone and with possession of methcathinone with intent to distribute on May 12, 1992, in violation of 21 U.S.C. Secs. 841(a)(1), (d)(1). Finally, the indictment charged Hooper with conspiracy to manufacture and distribute methcathinone from the spring of 1991 to January of 1993, in violation of 21 U.S.C. Secs. 846, 813, 802(32)(A). Counts one through five involved crimes committed prior to May 1, 1992, when methcathinone was illegal under the Controlled Substances Analogue statutes. Counts six through eight charged conduct after May 1, 1992, when methcathinone became a Schedule I controlled substance. The conspiracy counts straddle methcathinone's placement on Schedule I.
 
 
 7
 Appointed counsel initially represented Hooper, through his pre-trial detention hearing. Thereafter, Hooper retained counsel in June 1993. In December, that attorney was permitted to withdraw, and the court appointed counsel to represent Hooper during trial. On March 7, 1994, Hooper's trial began. Hooper called two witnesses and testified on his own behalf. The jury returned a verdict of guilty on all counts on March 11. On August 11, the court sentenced Hooper to ten years' imprisonment on counts one through seven, and to seventeen years and one month in prison on the remaining three counts. These sentences were to be served concurrently. Additionally, the court imposed a $4,000 fine. Hooper then filed a timely notice of appeal on August 16.
 
 
 8
 On appeal, Hooper first argues that his prosecution for these crimes was barred by the Double Jeopardy clause of the Constitution. He claims that on remand a hearing will show that on January 7, 1993, Youngberg was arrested in Wisconsin while driving Hooper's van; a consent search of the vehicle revealed a small amount of methcathinone. Youngberg and others, including Couch and Hooper's brother, were charged with conspiracy in Wisconsin. Hooper alleges that his van was administratively forfeited under 21 U.S.C. Sec. 881. Hooper maintains that the forfeiture of his van followed by his own trial and conviction constitute multiple punishments for the same conduct.
 
 
 9
 Hooper never raised this issue in the court below. Thus, there is no evidence in the record to support Hooper's claims. "As a general rule, we will not consider issues not presented to and considered by the district court." United States v. Harris, 9 F.3d 493, 499 (6th Cir.1994) (citing United States v. Prickett, 941 F.2d 411, 415 (6th Cir.1991)). The Court retains discretion to consider such issues to "avoid a plain miscarriage of justice," but only to the extent the issue is presented with clarity and completeness. Id. Although Hooper correctly relies on cases stating that non-remedial civil sanctions may constitute punishment for Double Jeopardy purposes, his failure to raise the issue below constitutes waiver. Furthermore, even though this Court recently decided that a civil forfeiture could pose a Double Jeopardy bar, such is not the case presented here. United States v. Ursery, 59 F.3d 568 (6th Cir.1995). The administrative forfeiture of unclaimed property does not trigger Double Jeopardy protections. United States v. Torres, 28 F.3d 1463, 1465 (7th Cir.), cert. denied, 115 S.Ct. 669 (1994). Hooper apparently elected to not contest the administrative forfeiture of the van. Therefore, he has neither alleged any prior adjudication nor shown that the forfeiture was for the same offense. Thus, the issue is not sufficiently presented for this Court to review.
 
 
 10
 Hooper also contends that the district court erred by increasing his base offense level under USSG Sec. 3B1.1(c) based on his role in the offense. The United States requested a four-level increase, considering Hooper to be a leader of a criminal activity involving five or more people. The court agreed with the United States that Hooper was a leader, but that a two-level increase was more appropriate. USSG Sec. 3B1.1(c). This determination was not clearly erroneous. 18 U.S.C. Sec. 3742(e); United States v. Jackson, 25 F.3d 327, 331 (6th Cir.), cert. denied, 115 S.Ct. 344 (1994); United States v. Hofstatter, 8 F.3d 316, 325 (6th Cir.1993), cert. denied, 114 S.Ct. 1101 (1994); United States v. Johnson, 906 F.2d 1285, 1291-92 (8th Cir.1990).
 
 
 11
 The sentencing guidelines provide in pertinent part: "If the defendant was an organizer, leader, manager, or supervisor in any criminal activity ... increase by 2 levels." USSG Sec. 3B1.1(c). The application notes provide factors that the court should consider in making this determination, which include
 
 
 12
 the exercise of decision making authority, the nature of participation in the commission of the offense, the requirement of accomplices, the claimed right to a larger share of the fruits of the crime, the degree of participation in planning or organizing the offense, the nature and scope of the illegal activity, and the degree of control and authority exercised over others.
 
 
 13
 USSG Sec. 3B1.1, comment. (n. 4) (emphasis added). The guidelines do not require that each of these factors be present for the adjustment to apply.
 
 
 14
 In sentencing Hooper, the court referred to two witnesses who testified that Hooper taught them how to make methcathinone. It also mentioned Hooper's taking Fiszer's stereo as showing that he was "more than one of the guys." The court concluded that Hooper was more like an "enforcer" or "someone in control" who ensured that the drugs were paid for and delivered. It stated that it believed that Hooper was "a leader of the group ... in the sense of 3B1.1(c)." Finally, the court referred to testimony that Hooper recruited others to help in the production of methcathinone: "It seemed to be a bunch of people out there doing their own thing, trying to get others involved. And I think [Hooper] was able to get at least Messieurs Couch, Youngberg, and Fiszer involved, because they all testified [to that effect]." Then, despite testimony as to the number of people involved, the court felt that Hooper was not a leader of a major criminal enterprise and granted only a two-level increase. We find no error in this conclusion.
 
 
 15
 Hooper next argues that the court erred by making an upward adjustment for obstruction of justice based on his testifying on his own behalf. Hooper claims this was clearly erroneous because the court neither evaluated his testimony in the light most favorable to him, United States v. Head, 927 F.2d 1361, 1372 (6th Cir.), cert. denied, 502 U.S. 846 (1991), nor made any independent findings of fact on the matter. United States v. Seymour, 38 F.3d 261, 263-64 (6th Cir.1994). However, an attempt to mislead the jury by giving false exculpatory testimony is properly sanctioned as an obstruction of justice. United States v. Blandford, 33 F.3d 685, 710 (6th Cir.1994), cert. denied, 115 S.Ct. 1821 (1995). In an independent evaluation of Hooper's testimony, the court did not accept his version and concluded that his testimony was untruthful.
 
 
 16
 Section 3C1.1 provides: "If the defendant willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice during the investigation, prosecution, or sentencing of the instant offense, increase the offense level by 2 levels." USSG Sec. 3C1.1. Among the examples of conduct to which this enhancement applies is "committing ... perjury." Id., comment. (n. 3(b)). However, "[t]o ensure that defendants who are found guilty are not penalized by automatic enhancement of their sentences under Sec. 3C1.1 for having testified ... if a defendant objects to an enhancement for obstruction of justice, the district court must 'review the evidence and make independent findings necessary to establish' the perjury." United States v. Spears, 49 F.3d 1136, 1143 (6th Cir.1995) (quoting United States v. Dunnigan, 113 S.Ct. 1111, 1117 (1993)); Seymour, 38 F.3d at 264. To comply with this directive, the court "must identify for the record at least some specific instances of conflicting testimony and specify which portions of the defendant's testimony [it] finds materially perjurious." Spears, 49 F.3d at 1143.
 
 
 17
 At Hooper's sentencing, the court stated, "When [Hooper] took the stand, I would conclude by a preponderance of the evidence based on all the testimony that I heard that he perjured himself, that he lied when he said he just happened to be the wrong guy in the wrong place at the wrong time." The court went on to find that Hooper committed perjury. Clearly, the court rejected the totality of Hooper's testimony. This is particularly obvious when considered in light of the fact that Hooper denied any culpability and that the district court not only found Hooper to be involved, but to be a leader as well.
 
 
 18
 Hooper also argues that the court erred by not reviewing whether methcathinone was properly scheduled temporarily as a Schedule I controlled substance. He claims that judicial review was available based on Touby v. United States, 500 U.S. 160 (1991), and that the court's failure to recognize this constitutes reversible error. Although Touby, 500 U.S. at 168, states that Section 811(h)(6) "does not preclude an individual facing criminal charges from bringing a challenge to a temporary scheduling order as a defense to prosecution," even had the court reviewed methcathinone's scheduling, any error found would be harmless as Hooper's actions were still illegal under the Controlled Substance Analogue statutes. Hooper's argument is therefore unavailing. His convictions on the first five counts would not be affected; those crimes were committed before May 1, 1992, and the United States proved at trial that methcathinone is a controlled substance analogue. Likewise, his conviction on the last two counts would stand because the conspiracies straddled the date of methcathinone's scheduling. Furthermore, because Hooper failed to object to the magistrate's report and recommendation on this issue, it is not properly before this Court.
 
 
 19
 Lastly, Hooper raises an ineffective assistance of counsel claim. Because this issue has not previously been submitted to the district court, the record is insufficient to permit this Court to assess its merits. This Court will not consider ineffective assistance of counsel claims raised for the first time on direct appeal. United States v. Seymour, 38 F.3d 261 (6th Cir.1994); United States v. Goodlett, 3 F.3d 976 (6th Cir.1993). Furthermore, even were we to address the claim, Hooper's allegations at this point do not rise to the level of ineffective assistance. Strickland v. Washington, 466 U.S. 668 (1984); Taylor v. United States, 985 F.2d 844 (6th Cir.1993); United States v. August, 984 F.2d 705 (6th Cir.1992), cert. denied, 114 S.Ct. 158 (1993). Hooper has not shown that his counsel's performance fell below professional standards or that the outcome of his case would otherwise have been different. United States v. Morrow, 977 F.2d 222 (6th Cir.), cert. denied, 113 S.Ct. 2969 (1992).
 
 
 20
 Therefore, we AFFIRM Hooper's conviction and sentence.