77 F.3d 483
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Bondary McCALL, Defendant-Appellant.
 No. 95-3015.
 United States Court of Appeals, Sixth Circuit.
 Feb. 20, 1996.
 
 1
 Before: MERRITT, Chief Circuit Judge; RYAN, Circuit Judge; and CLELAND, District Judge.*
 
 RYAN, Circuit Judge
 
 2
 The defendant, Bondary McCall, appeals his conviction and sentence arising from his participation in a cocaine distribution conspiracy. McCall assigns error to the district court's sentencing determinations concerning the amount of cocaine attributable to him, his leadership role and the imposition of a fine of $10,000. Additionally, the defendant argues, for the first time, that his double jeopardy protections were violated.
 
 
 3
 We affirm the judgment of conviction and the sentence, and we hold that the defendant waived his double jeopardy claim.
 
 I.
 
 4
 The defendant was found guilty of conspiracy to distribute and possess with the intent to distribute in excess of five kilograms of cocaine, in violation of 21 U.S.C. §§ 846 and 841(a)(1), (b)(1)(A)(ii); possession with the intent to distribute in excess of 5 kilograms of cocaine, in violation of 21 U.S.C. § 841(a)(1), (b)(1)(A)(ii); money laundering, in violation of 18 U.S.C. § 1956(a)(1)(A)(i), (a)(1)(B)(i); and engaging in interstate transportation in the aid of a racketeering enterprise, in violation of 18 U.S.C. § 1952.
 
 
 5
 The district court set the sentencing guideline offense level at 40. The court found that the aggregate quantity of cocaine for purposes of calculating the defendant's base offense level was 70 kilograms. The 70 kilograms attributable to defendant falls within the 50-150 kilogram range that yields a base offense level of 36. The court found that defendant warranted a four-level enhancement for his leadership role in the conspiracy, thereby generating an offense level of 40, McCall was assigned a criminal history category of I and his sentence range therefore was 292 to 365 months in prison. The court sentenced the defendant to a 365-month prison term with a five-year period of supervised release, and assessed a $10,000 fine plus $800 in special assessments.
 
 
 6
 As the district court found the evidence adduced at trial demonstrated that the defendant joined his brother, Albert McCall in Albert's established drug organization in Columbus, Ohio, while Albert was in jail from November 1989 through the spring of 1990. By the spring of 1990, the defendant and his brother had become partners. When the partnership received shipments of cocaine from its out-of-state supplier, the defendant was allocated one kilogram, which he sold through his distributor in Cincinnati. In addition to distribution, the defendant later became involved in the transportation of cocaine from Atlanta to Columbus by driving vehicles, or arranging for others to drive them, which were outfitted with hidden compartments for the transportation of drugs. Each vehicle could hold up to 22 kilograms of cocaine. The average load was about 10 kilograms. Members of the conspiracy testified that the defendant gave them their instructions, paid them, and requested that they purchase drug transportation vehicles for him. A number of drug couriers testified that the defendant had approached them, asked them to make trips, and paid for their return airline tickets. These witnesses knew that they were transporting cocaine, although they did not know the exact quantity.
 
 
 7
 On February 11, 1993, Albert McCall sent Crystal Inglesi out-of-state to pick up 19 kilograms of cocaine. Inglesi did not have any contact with the defendant on this trip. However, Albert McCall was in telephone contact with his brother that day. Albert McCall testified that he was expecting Inglesi to return to Columbus with a load of 10 kilograms of cocaine; however, the van actually contained 19 kilograms when it was seized.
 
 
 8
 Finally, the defendant's financial records support the testimony of the witnesses: large cash transactions via Western Union, large bills from American Express, hotel records, car rentals, and airline vouchers
 
 II.
 A.
 
 9
 The defendant contends that the court erred in basing his offense level on the sale of 50-150 kilograms of cocaine. The defendant argues that it was error to attribute 70 kilograms of cocaine to him for purposes of calculating his offense level because that amount was not reasonably foreseeable to him and because the estimates used by the court were not supported by the minimal indicia of reliability that is required at sentencing.
 
 
 10
 The defendant urges this court to find that the 19 kilograms of cocaine, which the government agents seized on February 12, 1993, from Albert McCall, were not properly attributable to the defendant. Defendant contends that the 19-kilogram transaction was not reasonably foreseeable to him because the transaction was conducted strictly by Albert McCall, and because the load was larger than average. The defendant argues that the load was sufficiently unique in size to take it outside the scope of any previous common scheme or plan in which the appellant participated. Finally, the defendant contends that because the quantity of cocaine attributed to him was based on the estimates of participants rather than on actual knowledge of the precise quantities transported, the evidence used against him was not reliable, and the government failed to satisfy its burden of proving the amount of cocaine for which he could be charged.
 
 
 11
 The district court's factual findings concerning the amount of drugs attributable to a defendant may be overturned only if they are clearly erroneous. United States v. Bashara, 27 F.3d 1174, 1181 (6th Cir1994), cert. denied, 115 S.Ct.909 (1995); United States v. Walton, 908 F.2d 1289, 1300-1301 (6th Cir.), cert. denied, 498 U.S. 990 (1990).
 
 
 12
 We find no error in the district court's determination of the amount of cocaine attributable to the defendant. The district court properly examined the evidence and conservatively attributed to the defendant only those quantities that were related to defendant's participation in the conspiracy for which he was convicted. The court based its calculation of 70 kilograms of cocaine attributable to the defendant on an estimated 50 kilograms of cocaine delivered by Margo O'Daniel and Marcia Perry on five trips from Atlanta to Columbus in the fall of 1992, one kilogram of cocaine delivered by Crystal Inglesi to defendant on February 14, 1991, and the 19 kilograms seized from Albert McCall on February 21, 1993. The district court found that
 
 
 13
 the evidence demonstrated beyond a reasonable doubt, not simply by a preponderance, that the defendant directed the activities of Margo O'Daniel and Marcia Perry, and that in over five trips from Atlanta to Columbus in the fall of 1992, these two women delivered over 50 kilograms of cocaine to Bondary McCall.
 
 
 14
 ... [T]he evidence indicates also, without any contrary information, that Mr. Bondary McCall received a kilogram of cocaine from Crystal Inglesi in February 1991; and finally, ... the evidence is clear beyond a reasonable doubt, and certainly by a preponderance, that Mr. Bondary McCall set up the 19-kilogram cocaine shipment that was ultimately seized and attributed to him....
 
 
 15
 The testimony of Albert McCall and seven other coconspirators, Western Union wire transfers, telephone tolls and pen registers, hotel records, car rental receipts, airline vouchers, and credit card receipts all support the district court's determination.
 
 
 16
 The 19-kilogram transaction was reasonably foreseeable to the defendant. He was a leader in the conspiracy, and at least a portion of the load was to go to defendant's connection in Cincinnati. In addition, Albert and the defendant were in contact by phone the morning that the 19 kilograms of cocaine were delivered.
 
 
 17
 We are satisfied that there was ample evidence to support the district court's conclusion that 70 kilograms were attributable to the defendant.
 
 B.
 
 18
 The defendant challenges the four-point enhancement for a leadership role, arguing that his participation in the criminal drug trafficking activity was subordinate to that of the actual organizers and leaders of the conspiracy and that he acted at their direction and under their control. The defendant points out that Albert McCall's drug transportation and distribution scheme was already firmly in place before the defendant became involved, and that Crystal Inglesi, Lachena Jeter, and Marcia Perry had all been previously recruited by Albert.
 
 
 19
 Defendant broadly contends that "any actions of his own which may be construed as in furtherance of the conspiracy were performed at the direction and under the control of either his brother Albert or the Willises"; however, the only factual "support" he mentions for this proposition is that one woman testified that on one of her trips she acted under the instruction of Michael Willis, and that the trip did not involve the defendant.
 
 
 20
 The trial court's "finding as to the applicability of § 3B.1 is a factual finding subject to the 'clearly erroneous' standard of review." United States v. Feinman, 930 F.2d 495, 500 (6th Cir.1991) (quoting United States v. Silverman, 889 F.2d 1531, 1535 (6th Cir.1989)).
 
 
 21
 The guidelines provide for a four-point enhancement in an individual's guideline offense level "[i]f the defendant was an organizer or leader of a criminal activity that involved five or more participants or was otherwise extensive...." U.S.S.G. § 3B1.1(a) (Nov. 1992). A court should assess a defendant's putative leadership role in terms of the factors discussed in Application Note 3. Relevant factors include:
 
 
 22
 [T]he exercise of decision making authority, the nature of participation in the commission of the offense, the recruitment of accomplices, the claimed right to a larger share of the fruits of the crime, the degree of participation in planning or organizing the offense, the nature and scope of the illegal activity, and the degree of control and authority exercised over others.
 
 
 23
 U.S.S.G. § 3B1.1 comment (n3).
 
 
 24
 The trial court's finding that defendant had a leadership role in the conspiracy is not clearly erroneous. That the defendant shared the leadership with others in the conspiracy does not reduce defendant's participation to a lower level: "[t]here can, of course, be more than one person who qualifies as a leader or organizer of a criminal association or conspiracy." U.S.S.G. § 3B1.1, comment. (n. 3).
 
 
 25
 Defendant was a partner in a cocaine distribution network that operated in at least three states over a three year period, and involved between five and twenty people. Albert McCall began the network as early as 1983, but by 1990 or 1992, defendant had joined the organization and was running it with his brother. Defendant was in direct contact with the sources of supply. He decided that the brothers should buy their own transport vehicles, and he located a new supplier in late 1992. Defendant directed Marcia Perry to transport cocaine from Atlanta to Columbus, and directed Talesia Potter to deliver money and transport vehicles for him. Defendant made transportation arrangements for drug couriers moving between Columbus and Atlanta and gave them their instructions. He directed the activities of Alukis Hight, who distributed cocaine for defendant in Cincinnati, and ordered Anthony Givens to find people to transport cocaine to Cincinnati. In the fall of 1992, defendant oversaw the transportation of the cocaine and its distribution in Cincinnati. We find no error in the enhancement for a leadership role.
 
 C.
 
 26
 Defendant contends that the court failed to consider whether he had the ability to pay the $10,000 fine that was imposed. According to the defendant, the court overestimated defendant's ability to pay the fine by including in defendant's assets the $14,275 equity defendant had in his residence without recognizing that the defendant might never recover the equity in the house, which was in foreclosure. At the time of sentencing, defendant argued that the equity might not be available to him after foreclosure but did not actually dispute the amount of equity in the residence. Moreover, the defendant argues he will be over the age of 60 when released from confinement and will have greatly reduced earning capacity at that age.
 
 
 27
 The trial court's findings concerning a defendant's ability to pay a fine are factual findings subject to a clearly erroneous standard of review. United States v. Hickey, 917 F.2d 901, 906 (6th Cir.1990). A court is required to impose a fine unless " 'the defendant establishes that he is unable to pay and is not likely to become able to pay any fine.' " United States v. Vincent, 20 F.3d 229, 240 (6th Cir.1994) (quoting U.S.S.G. § 5E1.2(a)) (emphasis added).
 
 
 28
 The district court's conclusion that defendant had the ability to pay the fine by applying the equity in his house, working during his long incarceration, or applying income to the fine after his release is not clearly erroneous. It is defendant's burden to establish that he is unable to pay a fine and he has failed to carry the burden. Imposition of the fine was not clearly erroneous.
 
 D.
 
 29
 Defendant raises a claim that his double jeopardy protections against multiple punishments for the same offense have been violated by the criminal sentence of incarceration imposed while the government has also pursued a civil forfeiture action against the defendant's 1990 Mercedes. The underlying money laundering charge contained in Count 21 of the superseding indictment forms the basis for both the criminal conviction and the forfeiture. The defendant did not raise this claim at trial or sentencing but requests that his claim now be heard in light of the Supreme Court's recent decision concerning forfeiture and double jeopardy. Austin v. United States, 113 S.Ct. 2801 (1993).
 
 
 30
 Defendant argues that his criminal conviction is barred because his title to the 1990 Mercedes was relinquished at the time of his alleged participation in the criminal conspiracy for which he was later convicted. Alternatively, defendant submits that his criminal conviction and sentence bar the civil forfeiture action because the conviction and sentence were imposed prior to the completion of the forfeiture action.
 
 
 31
 This court reviews de novo the constitutional issue of double jeopardy. United States v. Ursery, 59 F.3d 568, 570 (6th Cir.1995), cert. granted, 64 U.S.L.W. 3477, 3484 (U.S. Jan. 12, 1996) (Nos. 95-345, 95-346).
 
 
 32
 "[T]he Double Jeopardy Clause protects against three distinct abuses: a second prosecution for the same offense after acquittal; a second prosecution for the same offense after conviction; and multiple punishments for the same offense." United States v. Halper, 490 U.S. 435, 440 (1989). In a claim of the kind McCall makes, we must decide three questions in order to determine whether the government has violated a defendant's constitutional right:
 
 
 33
 (1) whether the civil forfeiture in the instant case constitutes "punishment" for double jeopardy purposes; (2) whether the civil forfeiture and criminal conviction are punishment for the same offense; and (3) whether the civil forfeiture and criminal prosecution are separate proceedings.
 
 
 34
 Ursery, 59 F.3d at 570-71 (emphasis added). United States v. Salinas, 65 F.3d 551, 553-54 (6th Cir.1995), provides that forfeitures of property used or intended to be used in a drug crime may constitute punishment, but that forfeiture of drug proceeds, including property secured with the proceeds of illegal activity, is purely remedial and thus does not constitute the attachment of jeopardy.
 
 
 35
 The defendant argues that the forfeiture of his car, followed by his own trial and conviction, constitute multiple punishments for the same conduct. However, because the defendant never raised this issue at trial or sentencing, there is no evidence in the record to support McCall's contention that he has been twice placed in jeopardy. "As a general rule, we will not consider issues not presented to and considered by the district court." United States v. Harris, 9 F.3d 493, 499 (6th Cir.1993) (citing United States v. Pickett, 941 F.2d 411, 415 (6th Cir.1991)). The court may consider such issues to avoid " 'a plain miscarriage of justice,' " only if the issue is presented with clarity and completeness. Pickett, 941 F.2d at 415 (quoting Pinney Dock and Transp. Co. v. Penn Cent. Corp., 838 F.2d 1445, 1461 (6th Cir.), cert. denied 488 U.S. 880 (1988)). Because the defendant did not contest the forfeiture of his car and raise the double jeopardy issue below, the record does not permit a determination as to whether McCall's case is governed by Salinas. The defendant has waived his double jeopardy claim. See United States v. Hooper, No. 94-1912, 1995 WL 514649 (6th Cir. Aug. 29, 1995) (unpublished per curiam).
 
 III.
 
 36
 We AFFIRM McCall's conviction and sentence.
 
 
 
 *
 The Honorable Robert H Cleland, United States District Judge for the Eastern District of Michigan, sitting by designation