NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 08a0679n.06
Filed: November 5, 2008

No. 07-1932

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | |
| v. | ) | ON APPEAL FROM THE UNITED |
| | ) | STATES DISTRICT COURT FOR THE |
| RICHARD ANTHONY RHODES, | ) | EASTERN DISTRICT OF MICHIGAN |
| | ) | |
| Defendant-Appellant. | ) | |

Before: MOORE and COOK, Circuit Judges; and HOOD,* District Judge.

COOK, Circuit Judge. Richard Rhodes appeals his conviction of firearm-related offenses, challenging the denial of his motion in limine and the sufficiency of the perjury finding. Discerning no abuse of discretion in the in-limine ruling and sufficient support for the perjury-based enhancement, we affirm.

I

In January 2006, police responded to a report that two men were arguing at an intersection and that one of them brandished a gun. As police drove to the intersection, they saw a man matching the reported description. This man, who turned out to be Rhodes, parked at a gas station and entered

_____

*The Honorable Joseph M. Hood, United States District Judge for the Eastern District of Kentucky, sitting by designation.

its convenience store. Meanwhile, officers looked inside his car, where they saw a distinctive blue hat with gold embroidery fitting the reported description. With some difficulty (Rhodes tried to run), officers arrested Rhodes and found a pistol in his car. Rhodes denied owning the pistol, explaining that he took it from "Mark," a neighbor who threatened Rhodes with the pistol during a fight.

Three months later, Rhodes had another run-in with the police. When executing a search warrant at an apartment after a controlled buy there, police found a surprised Rhodes asleep on a bed in that apartment. On the floor of an open, walk-in closet near the bed, police found three boxes containing 146 bullets sitting in plain view just beneath the hanging clothes. These bullets were the size—9 mm—to fit the pistol seized from Rhodes in January. Officers also found a business card from Rhodes's probation officer and the police report from the January arrest.

In the second bedroom, officers awakened Rhodes's roommate, Alfonso Johnson, and found a 9-mm Luger loaded with ten rounds, three of which matched those in the bullet boxes. They also discovered cocaine in Johnson's room and one bag each of cocaine and marijuana on the counter in the apartment's common area. Rhodes had no drugs in his room, but the cocaine found in the living-room sat under a hat with gold embroidery, a red version of the blue hat found in Rhodes's car in January.

The government charged Rhodes with being a felon in possession of a firearm (from the January arrest) and a felon in possession of ammunition, but did not charge him with any drug offenses. At trial, Rhodes claimed to know nothing of the ammunition in his closet or the drug-

dealing at his apartment. According to Rhodes, he ended up in the wrong place at the wrong time; not only had he never owned a handgun, but he also denied living at the apartment, saying that he primarily stayed with his girlfriend or his mother, keeping the apartment only because his lease had yet to expire. The informant who purchased cocaine at the apartment bolstered Rhodes's testimony to the extent that he described the seller as approximately 160 pounds; Rhodes weighs 285 pounds.

The jury convicted Rhodes, and at sentencing, the district court imposed a two-level obstruction-of-justice enhancement for Rhodes's perjuring himself by disavowing knowledge of ammunition in his closet. Rhodes received a 78-month sentence, the lowest in the Guidelines range.

Rhodes's appeal attacks the two-level enhancement, as well as the denial of his motion in limine aimed at excluding evidence of drugs found at the apartment under Federal Rules of Evidence 402 (irrelevance) and 403 (substantially more prejudicial than probative).

II

A. Denial of Motion in Limine

We review the denial of a motion in limine for abuse of discretion, *United States v. Goosby*, 523 F.3d 632, 638 (6th Cir. 2008), defined as a "definite and firm conviction that the trial court committed a clear error of judgment." *United States v. Hunt*, 521 F.3d 636, 648 (6th Cir. 2008) (citations omitted).

Rhodes argues that the evidence of the marijuana and cocaine in his apartment either had no relevance to his knowing possession of ammunition or created unfair prejudice by encouraging jurors to impermissibly infer guilt from character, which the district court allegedly exacerbated when Rhodes testified and the court allowed evidence of his prior marijuana felony conviction. We uphold the district court's decision to admit the drug evidence for at least two reasons. First, the drugs were *res gestae*, or "background," evidence. This court has explained:

> "Proper background evidence has a causal, temporal or spatial connection with the charged offense," and includes evidence that is "a prelude to the charged offense, is directly probative of the charged offense, arises from the same events as the charged offense, forms an integral part of a witness's testimony, or completes the story of the charged offense."

*United States v. Martinez*, 430 F.3d 317, 335 (6th Cir. 2005) (quoting *United States v. Hardy*, 228 F.3d 745, 748 (6th Cir. 2000)). Evidence of the controlled purchase and drugs found at the apartment initiated this case; the drugs explain why the police raided Rhodes's apartment. Moreover, the three baggies in the common area adjacent to Rhodes's bedroom had a spatial and temporal connection to the ammunition. Rhodes mischaracterizes the facts when he complains that "the drugs in question . . . were not found anywhere near Defendant."

Second, the drugs provided a motive for possessing the ammunition: protecting the drug stash. Contrary to Rhodes's view that this case has "nothing to do with drugs," the district court followed the accepted view that guns (and naturally, ammunition) are "tools of the trade" used to protect drugs and drug money. *See United States v. Hardin*, 248 F.3d 489, 499 (6th Cir. 2001)

("This Court has held many times that guns are 'tools of the trade' in drug transactions."). Further linking Rhodes and his ammunition to drug activity, officers found cocaine under a hat similar to one he wore on the day of his January arrest. On these facts, the district court could conclude that the drugs' "probative value" was not "*substantially* outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury . . . ." *See* Fed. R. Evid. 403 (emphasis added); *see also United States v. Logan*, 250 F.3d 350, 368 (6th Cir. 2001) (in Rule 403 review, "we maximize the probative value of the evidence and minimize its potential prejudice to the defendant").

*United States v. Till* supports admitting the drug-related evidence. 434 F.3d 880 (6th Cir. 2006). In *Till*, even though the government only charged a felon-in-possession-of-a-firearm offense, the district court admitted evidence of drugs found on the defendant's person and in his car. The *Till* panel rejected the contention that the government could recount discovering the firearm without alluding to the drugs. Instead it held that the district court properly admitted the drug-related evidence as "temporally and spatially-connected background evidence" and "because of the propensity of people involved with drugs to carry weapons." *Id.* at 884. *Till* also considered unfavorably another of Rhodes's arguments—that small drug quantities do not require armed protection. *Id.* at 883. While Rhodes attempts to differentiate *Till* by emphasizing that he was not "alleged to be involved with drugs," he misses the point. Declining to charge a drug offense does not bar appropriate trial reference to drugs. *See United States v. Stone*, 218 F. App'x 425, 438–39 (6th Cir. 2007) (given the connection between firearms and drugs, finding evidence of firearms relevant even though the government only charged conspiracy to sell narcotics); *United States v.*

*McCutchen*, 150 F. App'x 517, 522 (6th Cir. 2005) (in felon-in-possession case, no plain error in admitting evidence that defendant retrieved drugs from cabinet where that evidence showed familiarity with the house and constructive possession of a firearm in different cabinet).

Rhodes also argues that the evidence of his prior marijuana felony compounded the unfair prejudice created by admitting the other drug-related evidence. This argument fails because the charge against Rhodes—being a felon in possession of ammunition and a gun—already tipped the jury to his prior felony. *See* 18 U.S.C. § 922(g). Moreover, presumably to draw the sting out of the prior felony, Rhodes himself took the initiative and addressed the prior felony, a strategic choice that undermines his unfair-prejudice claim.

### B. Obstruction-of-Justice Enhancement

Rhodes also contends that the district court made insufficient findings to support his obstruction-of-justice enhancement for perjury, a subject for tripartite review:

> First, we review the district court's finding of facts underlying the enhancement for clear error. Next, the district court's conclusion that a given set of facts constitutes obstruction of justice is a mixed question of law and fact which we review de novo. Finally, once the district court has determined that the defendant has obstructed justice . . . we review the enhancement de novo.

*United States v. Chance*, 306 F.3d 356, 389 (6th Cir. 2002) (internal citations omitted).

A defendant commits perjury, triggering a two-level enhancement under U.S.S.G. § 3C1.1,

"if she gives *false testimony* concerning a *material matter* with the *willful intent* to provide false testimony, rather than as a result of confusion, mistake, or faulty memory." *United States v. Dunnigan*, 507 U.S. 87, 94 (1993) (emphasis added). To avoid applying this enhancement to every defendant who testifies but fails to convince a jury, the Supreme Court instructs the "district court to address each element of the alleged perjury in a separate and clear finding." *Id.* at 95. Here, the district court stated:

> Well, obviously I . . . will consider the fact that the . . . jury which heard all the testimony in this case found beyond a reasonable doubt that he illegally possessed ammunition at his house.
>
> I don't even have to go back and talk about whether he obstructed justice by his testimony regarding the . . . incident on the street . . . I'm only referring to his testimony regarding the ammunition.
>
> And I do find that there was sufficient evidence that beyond a reasonable doubt he was guilty of possessing ammunition as a convicted felon. It was in his bedroom and it was . . . pretty clear that he had control and possession over the ammunition.
>
> And . . . his testimony then [in] which he absolutely denied that he knew anything about that ammunition at all, would constitute an obstruction of justice. That is false testimony.
>
> And that's the risk that you take I guess taking the witness stand in a matter of this kind when there is evidence that . . . would convince a jury beyond reasonable doubt and . . . convinces this Court beyond a reasonable doubt that he had knowledge of and had actual possession of ammunition which is a violation of the federal statute.

Rhodes misplaces his reliance on *United States v. Paulette*, 457 F.3d 601 (6th Cir. 2006), where the district court identified the perjurious statement as "a certain statement regarding his address . . . [aimed at persuading] the finder of fact to a particular position or finding." *Id.* at 605. That district court elaborated little on this vague statement: "Because of what the defendant was

attempting to do in that statement that made it a material statement and the court finds that based on that he was impeached, it was clearly from the evidence a false statement . . . ." *Id.* Rhodes embraces *Paulette* as supporting his insufficiency argument, contending that the *Paulette* court vacated the sentence in the face of a more detailed finding than occurred here. Yet the *Paulette* district court recited the elements of perjury without tying them to any specific facts. That is, the findings failed to "encompass[] all of the factual predicates for a finding of perjury." *Id.* at 607 (quoting *United States v. Lawrence*, 308 F.3d 623, 632 (6th Cir. 2002)).

Contrasting with the *Paulette* court's failure to set out the factual *predicates*, the district court here simply neglected to name the three legal elements of perjury. Even without these "magic words" though, the district court satisfied the *Dunnigan* test. First, it identified a false statement: Rhodes unequivocally claimed ignorance of the stored ammunition. Second, this false statement counted as material because the only disputed element of Rhodes's case involved whether he "knowingly possessed the firearm and ammunition specified in the indictment." *See United States v. Mackey*, 249 F. App'x 420, 423 (6th Cir. 2007) (quoting *United States v. Schreane*, 331 F.3d 548, 560 (6th Cir. 2003)); *see also United States v. Seymour*, 38 F.3d 261, 264 (6th Cir.1994) (holding that where a district court's findings "encompass all elements of perjury except materiality, *Dunnigan* does not require a remand because materiality is a question of law"). Finally, the district court addressed willfulness by noting that "[the ammunition] was in his bedroom and it was . . . pretty clear that he had control and possession over [it]" and ". . . his testimony then [in] which he absolutely denied that he knew anything about that ammunition at all, would constitute an

obstruction of justice." Rhodes's lack of equivocation on the matter eliminates the chance of "confusion, mistake, or faulty memory." *Dunnigan*, 507 U.S. at 94.

Accordingly, we affirm Rhodes's obstruction-of-justice enhancement because the district court sufficiently explained its perjury findings. *See United States v. Thomas*, 272 F. App'x 479, 488 (6th Cir. 2008) (table) (district court's implicit finding that statements were willful sufficed to establish the requisite factual predicates for perjury despite absence of explicit statements about materiality or willfulness); *see also United States v. Hooper*, 65 F.3d 169, 1995 WL 514649, at *5 (6th Cir. 1995) (per curiam) (table) (upholding obstruction-of-justice enhancement despite absence of materiality and willfulness findings, where "the court rejected the totality of [the defendant's] testimony" and the defendant "denied any culpability" but was actually found to be a leader).

III.

For these reasons, we affirm Rhodes's conviction and sentence.

No. 07-1932
*United States v. Rhodes*

**KAREN NELSON MOORE, Circuit Judge, concurring in judgment as to conviction, dissenting as to sentence.**  While I concur in the majority's judgment as to Rhodes's conviction, I respectfully dissent from its holding that the district court made sufficient findings to support the obstruction-of-justice sentencing enhancement.  I would therefore affirm Rhodes's conviction but vacate his sentence.

Rhodes was convicted of two counts, felon in possession of a firearm and felon in possession of ammunition.  The parties agreed that under the Sentencing Guidelines, the base level for these offenses was 20 and that Rhodes fell into criminal history category III.  Rhodes Br. at 15.  The district court applied two enhancements to Rhodes's base level:  4 points because Rhodes possessed a firearm in connection with another felony; and 2 points because Rhodes obstructed justice by perjuring himself on the stand at his trial.  *Id.*  This 2-point enhancement for obstruction of justice as delineated by § 3C1.1 of the Sentencing Guidelines is at issue on appeal.

As the majority correctly notes, the Supreme Court has approved the use of this enhancement only when certain conditions are met.  *See United States v. Dunnigan*, 507 U.S. 87, 94-95 (1993).[**] This court has built on those conditions and has articulated the following test:

---

[**] I note that the Supreme Court has recognized that its subsequent holding in *United States v. Booker* limits *Dunnigan* and prohibits district courts from using the enhancement for obstruction of justice to increase a defendant's sentence beyond the statutory maximum authorized by the jury's verdict.  *United States v. Booker*, 543 U.S. 220, 239-40 (2005).  Here the statutory maximum is ten years on each count, so Rhodes's sentence of 78 months does not raise this problem.  *See* 18 U.S.C. § 924(a)(2).

> For a district court to enhance a defendant's sentence under § 3C1.1, the court must: 1) identify those particular portions of defendant's testimony that it considers to be perjurious; and 2) either make a specific finding for each element of perjury or, at least, make a finding that encompasses all of the factual predicates for a finding of perjury.

*United States v. Lawrence*, 308 F.3d 623, 632 (6th Cir. 2002); *see also United States v. Paulette*, 457 F.3d 601, 606-07 (6th Cir. 2006). In *Lawrence*, we cited *Dunnigan* and explained that this analysis requires the district court to "review the evidence and *make independent findings* necessary to establish a willful impediment to or the obstruction of justice resulting from defendant's perjury." *Lawrence*, 308 F.3d at 632 (emphasis added).

I disagree with the majority's application of these well-established standards. The majority states that the district court set out the factual predicates of perjury as required, but "simply neglected to name the three legal elements of perjury." Maj. Op. at 8. As required by our caselaw, the district court did isolate Rhodes's statements regarding the ammunition and identified this as the testimony that the court found to be perjurious. However, after identifying the testimony it considered to constitute perjury, the district court failed to undertake the independent examination required. *See United States v. Chance*, 306 F.3d 356, 390 (6th Cir. 2002) ("The district court is required to 'review the evidence and make *independent findings* necessary to establish a willful impediment to or obstruction of justice, or an attempt to do the same under the perjury definition [the Court has] set out.'" (emphasis added) (quoting *Dunnigan*, 507 U.S. at 95)); *Lawrence*, 308 F.3d at 632. In making this independent finding of perjury, "[t]he district court may not rely solely on the jury's verdict." *Chance*, 306 F.3d at 389-90.

Contrary to the majority's assertion, the district court failed to make a sufficiently independent finding of perjury. At the outset of its decision to apply the obstruction-of-justice enhancement, the district court stated that it was considering the jury's verdict of guilty in making its determination. Beyond this reliance on the jury's verdict, the district court failed to set out independent reasons for determining that Rhodes had perjured himself. The district court's observation that the ammunition was in Rhodes's bedroom followed by a conclusory statement that it was "pretty clear that [Rhodes] had control and possession over the ammunition" is not a sufficient independent finding of perjury. Joint Appendix at 307 (Sent. Hr'g Tr. at 67). "Magic words" regarding perjury may not be necessary, but in order to ensure that this enhancement is not automatically given to defendants who are found guilty after testifying, the district court must detail the specific evidence that caused it to find, *independent of the jury verdict*, that the defendant's testimony was perjurious. *See, e.g., United States v. Comer*, 93 F.3d 1271, 1282-83 (6th Cir. 1996) (finding judge's independent review sufficient where judge specifically identified defendant's statements and delineated the evidence from trial that led judge to believe defendant had perjured himself and merited obstruction-of-justice enhancement). The district court cannot rest on conclusory statements that, overall, the evidence was contrary to the defendant's testimony, and we cannot fill the gap by guessing what the district court's reasons may have been. *See, e.g., Lawrence*, 308 F.3d at 633 ("It will not be enough, therefore, for a court to recognize conflicting testimony and to resolve, in its own mind, which witness is credible; nor will it be sufficient for a sentencing judge to broadly consider everything defendant said at trial to be perjurious. The district court must be

specific." (citation omitted)); *Chance*, 306 F.3d at 390 ("We are not permitted to review the record independently to make our own findings and then infer that the district court had the same statements in mind."); *United States v. McRae*, 156 F.3d 708, 713 (6th Cir. 1998) ("The [obstruction-of-justice] enhancement may not be affirmed on an inference that the ruling was based upon the government's arguments.").

Because the district court failed to conduct the required, independent analysis of the evidence presented at trial before imposing the obstruction-of-justice sentence enhancement, I would vacate Rhodes's sentence and remand for resentencing in light of this opinion.