**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,
　　　　　　　*Plaintiff-Appellee*,

　　　　v.

RAFAEL ALDANA,
　　　　　　　*Defendant-Appellant.*

No. 16-50372

D.C. No.
3:15-cr-03101-
BGS-DMS-1

Appeal from the United States District Court
for the Southern District of California
Dana M. Sabraw, District Judge, Presiding

UNITED STATES OF AMERICA,
　　　　　　　*Plaintiff-Appellee*,

　　　　v.

JULIO CESAR SUAREZ,
　　　　　　　*Defendant-Appellant.*

No. 16-50385

D.C. No.
3:15-cr-03156-
RBB-AJB-1

OPINION

Appeal from the United States District Court
for the Southern District of California
Anthony J. Battaglia, District Judge, Presiding

Argued and Submitted September 1, 2017
Pasadena, California

Filed December 29, 2017

Before:  William A. Fletcher and Sandra S. Ikuta, Circuit
Judges, and Sarah Evans Barker,[*] District Judge.

Opinion by Judge Ikuta

**SUMMARY**[**]

**Criminal Law**

Affirming misdemeanor convictions under 8 U.S.C.
§ 1325(a)(1) for attempting to enter the United States "at any
time or place other than as designated by immigration
officers," the panel held that a place "designated by
immigration officers" refers to a specific immigration facility,
not an entire geographic area.

---

[*] The Honorable Sarah Evans Barker, United States District Judge for
the Southern District of Indiana, sitting by designation.

[**] This summary constitutes no part of the opinion of the court.  It has
been prepared by court staff for the convenience of the reader.

**COUNSEL**

Doug Keller (argued), Federal Defenders of San Diego Inc., San Diego, California, for Defendants-Appellants.

Daniel E. Zipp (argued), Assistant United States Attorney; Helen H. Hong, Chief, Appellate Section, Criminal Division; Alana W. Robinson, Acting United States Attorney; United States Attorney's Office, San Diego, California; for Plaintiff-Appellee.

**OPINION**

IKUTA, Circuit Judge:

Rafael Aldana and Julio Cesar Suarez were each convicted of the misdemeanor offense of "attempt[ing] to enter the United States at any time or place other than as designated by immigration officers," in violation of 8 U.S.C. § 1325(a)(1). While not disputing that they entered the United States miles away from any established port of entry facility, Aldana and Suarez argue that because the applicable regulations designate entire geographic regions as ports of entry, there was insufficient evidence that they had violated the statute. We conclude that a place "designated by immigration officers" for purposes of § 1325(a)(1) refers to a specific immigration facility, not an entire geographic area, and therefore affirm the district court.

I

On November 28, 2015, a border patrol surveillance agent observed Rafael Aldana climbing over the fence separating

the United States and Mexico. A second agent found him hiding in the brush approximately 400 yards north of the border and two miles from the nearest port of entry facility at Otay Mesa, California. Aldana admitted to climbing over the fence and told the border patrol officer that he was a citizen of Mexico and had no documentation that would allow him to enter the United States on a legal basis. Aldana was charged with the misdemeanor offense of "attempt[ing] to enter the United States at any time or place other than as designated by immigration officers," in violation of 8 U.S.C. § 1325(a)(1).[1]

At a bench trial before a magistrate judge, Aldana moved for a judgment of acquittal on the ground that the government failed to prove that he had entered at a place not designated by immigration officers. The magistrate judge rejected Aldana's argument and the district court affirmed. Aldana was sentenced to time served.

Julio Cesar Suarez has a similar story. On November 26, 2015, a border patrol officer discovered Suarez lying down

---

[1] 8 U.S.C. § 1325(a)(1) states:

**(a) Improper time or place; avoidance of examination or inspection; misrepresentation and concealment of facts**

Any alien who (1) enters or attempts to enter the United States at any time or place other than as designated by immigration officers . . . shall, for the first commission of any such offense, be fined under Title 18 or imprisoned not more than 6 months, or both, and, for a subsequent commission of any such offense, be fined under Title 18, or imprisoned not more than 2 years, or both.

among the tumbleweeds in an area located north of the border fence and about two miles east of the Otay Mesa port of entry facility. Suarez admitted that he was a citizen of Mexico and did not have any documents giving him a lawful basis for entering the United States. Like Aldana, Suarez was also charged with "attempt[ing] to enter the United States at any time or place other than as designated by immigration officers," in violation of 8 U.S.C. § 1325(a)(1). At his bench trial, Suarez raised the same challenge to the sufficiency of the evidence as Aldana had raised, which was similarly rejected. Suarez received a four-month sentence.

Aldana and Suarez both filed timely notices of appeal and subsequently moved to consolidate their cases. On appeal, appellants continue to argue that the government adduced insufficient evidence to prove that they had attempted to enter at a place other than as designated by immigration officers. According to appellants, a "place other than as designated by immigration officers" for purposes of § 1325(a)(1) means a place other than at one of the ports of entry listed in 8 C.F.R. § 100.4(a). Section 100.4(a) of the Code of Federal Regulations states that "the following places are hereby designated as Ports-of-Entry for aliens arriving by any means of travel other than aircraft." 8 C.F.R. § 100.4(a). Under "District No. 39—San Diego, California," the regulation lists "Otay Mesa, CA." *Id.* Appellants argue that "Otay Mesa" refers to the entire area in south San Diego, extending to the Mexico border, which is commonly referred to as Otay Mesa, rather than to the Otay Mesa Port of Entry facility. In support of this argument, appellants note that § 100.4(a) sometimes

designates specific port facilities within some cities,[2] but in other cases lists only an entire city or geographic area.[3] Because immigration officials knew how to designate particular facilities in § 100.4(a), appellants argue, when the officials mention a geographic area instead of a specific facility, we must conclude that they intended to designate the entire area as a port of entry. When, as here, the regulations designate an entire geographic area as a port of entry, appellants contend, an alien who entered that area at any point along the border does not violate § 1325(a)(1).

## II

We review challenges to the sufficiency of evidence, including questions of statutory interpretation, de novo. *United States v. Roach*, 792 F.3d 1142, 1144 (9th Cir. 2015). "There is sufficient evidence to support a conviction if, viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id.* (quoting *United States v. Duran*, 189 F.3d 1071, 1078 (9th Cir. 1999)). Although Aldana and Suarez are no longer in custody, the case is not moot because collateral consequences are presumed to stem from a criminal conviction. *See United States v. Juvenile Male*, 564 U.S. 932, 936 (2011). The

---

[2] For example, the regulations list: "Boston, MA (the port of Boston includes, among others, the port facilities at Beverly, Braintree, Chelsea, Everett, Hingham, Lynn, Manchester, Marblehead, Milton, Quincy, Revere, Salem, Saugus, and Weymouth, MA)." 8 C.F.R. § 100.4(a).

[3] For example, the regulations list "District No. 11—Kansas City, Missouri; Class A: Kansas City, MO." 8 C.F.R. § 100.4(a).

district court had jurisdiction under 18 U.S.C. § 3402.  We have jurisdiction under 28 U.S.C. § 1291.

In order to convict a defendant of a violation of § 1325(a)(1), the government must prove beyond a reasonable doubt that the individual was an "alien who . . . enter[ed] or attempt[ed] to enter the United States at any time or place other than as designated by immigration officers." 8 U.S.C. § 1325(a)(1).  Neither the statute nor the regulations provide a definition of the phrase "place other than as designated by immigration officers."   Nevertheless, the meaning of this phrase can be discerned by reading it in its historical context.

## A

The Immigration and Nationality Act (INA) addresses how an alien may legally enter the country and establishes penalties for unauthorized entry, *see* 8 U.S.C. §§ 1321–1330. Section 1325(a)(1) is one of the penalty provisions.  The predecessor to this statute, originally enacted in 1917, prohibited unauthorized entry "by water at any time or place other than as designated by immigration officials, or by land at any place other than one designated as a port of entry for aliens" by specified immigration officials.  Immigration Act of 1917, Pub. L. No. 64-301, § 19, 39 Stat. 874, 889.[4]  In

---

[4] The applicable language stated:

> [A]ny alien who shall have entered the United States by water at any time or place other than as designated by immigration officials, or by land at any place other than one designated as a port of entry for aliens by the Commissioner General of Immigration, or at any time not designated by immigration officials, or who

1929, Congress decided there was "[n]o good reason" for "perpetuating the distinction . . . between entering by water or by land," and so the statute was amended to eliminate this distinction and impose criminal penalties on aliens who unlawfully entered the United States "in any manner." H.R. Rep. No. 70-2418, at 4 (1929). In merging the two means of entry, the statute eliminated the reference to "port of entry," and provided that "[a]ny alien who hereafter enters the United States at any time or place other than as designated by immigration officials," shall be guilty of a misdemeanor. Act of Mar. 4, 1929, Pub. L. No. 70-1018, § 2, 45 Stat. 1551, 1551. This language closely tracks the current version of § 1325(a)(1).[5]

Regulations subsequently promulgated by the Immigration and Naturalization Service (INS) in 1957 to

---

entering without inspection, shall, upon the warrant of the Secretary of Labor, be taken into custody and deported.

Immigration Act of 1917, Pub. L. No. 64-301, §19, 39 Stat. 874, 889.

[5] The statute stated:

Any alien who hereafter enters the United States at any time or place other than as designated by immigration officials, or eludes examination or inspection by immigration officials, or obtains entry to the United States by a willfully false or misleading representation or the willful concealment of a material fact, shall be guilty of a misdemeanor and, upon conviction, shall be punished by imprisonment for not more than one year or by a fine of not more than $1,000, or by both such fine and imprisonment.

Act of Mar. 4, 1929, Pub. L. No. 70-1018, § 2, 45 Stat. 1551, 1551.

explain how an alien could legally enter the country, *see* 8 C.F.R. pt. 235 (1957), reintroduced the term "port of entry," *see* 8 C.F.R. § 235.1 (1957). In explaining how an alien could legally enter the United States, § 235.1 provided that an alien "shall apply in person at a place designated as a port of entry for aliens at a time when the immigration office at the port is open for inspection." *Id.*

In 1967, the INS promulgated regulations to describe its organization and "indicate the established places" where it had offices, including specific ports of entry. *See* Immigration and Naturalization Service Statement of Organization, 32 Fed. Reg. 9616, 9616–17 (July 4, 1967). Section 100.4 set out the "regions, districts, suboffices and Border Patrol sectors," in which INS officials were located. 8 C.F.R. § 100.4 (1967). The regulation also designated specified places as ports of entry "for aliens arriving by any means of travel other than aircraft." *Id.* § 100.4(c)(2). Certain INS suboffices were maintained at Class A ports of entry listed in the regulations, while the regulations designated Class B ports of entry "for aliens who at the time of applying for admission are lawfully in possession of valid resident aliens' border-crossing identification cards." *Id.* Class C ports of entry were limited to crewmen. *Id.*

After issuing these regulations, the INS updated § 235.1 to incorporate the list of ports of entry in § 100.4(a) by reference. The amended § 235.1 provided that "[a]pplication to enter the United States shall be made in person to an immigration officer at a U.S. port of entry enumerated in Part 100 of this chapter at a time when the immigration office at the port is open for inspection." 8 C.F.R. § 235.1(a) (1968). Because this revision to § 235.1 required aliens to make an in-person application to an immigration officer at a port of

entry, and did not differentiate between ports of entry listed in § 100.4(a) that named a specific facility and those that named a geographic area, it confirms that INS used the term "port of entry" to refer to specific facilities. Although § 235.1(a) has subsequently been amended multiple times, the requirement of in-person application has not changed. Under the current version of § 235.1(a), "[a]pplication to lawfully enter the United States shall be made in person to an immigration officer at a U.S. port-of-entry when the port is open for inspection, or as otherwise designated in this section." 8 C.F.R. § 235.1(a) (2017).

After the terrorist attacks of September 11, 2001, Congress passed several acts aimed at enhancing national security. One such act, the Homeland Security Act, eliminated the INS and transferred its immigration functions to the newly created Department of Homeland Security (DHS). 6 U.S.C. §§ 291, 202(3). After the INS was eliminated (and therefore no longer had official facilities), DHS revised § 100.4 to remove references to INS offices and suboffices. *See* Removing References to Filing Locations and Obsolete References to Legacy INS, 74 Fed. Reg. 26,933, 26,933 (June 5, 2009). As a result, the current version of § 100.4(a) no longer states that INS suboffices are located at Class A ports of entry, and therefore no longer expressly links the list of ports of entry to specific INS facilities. Nevertheless, there is no indication that DHS intended to change the meaning of "port of entry" to refer to geographical areas, as opposed to specific facilities where an alien could apply for entry. Rather, the U.S. Customs and Border Protection now has the authority to inspect individuals and

goods arriving at ports of entry.**⁶**  *See* U.S. Customs and Border Protection, *About CBP*, (Nov. 21, 2016) https://www.cbp.gov/about.

We read the current version of § 1325(a)(1) in light of this historical context.  Because an alien who wants to enter the United States lawfully must submit an application at a designated port of entry when it is open for inspection per 8 C.F.R. § 235.1(a), a "port of entry" necessarily includes a physical facility that is staffed by immigration officials who can accept these applications.  Section 1325(a)(1) imposes penalties on an alien who fails to follow the procedure for lawful entry set forth in § 235.1(a), and instead enters at a "place other than as designated by immigration officers." 8 U.S.C. § 1325(a)(1).  Reading § 1325(a)(1) and § 235.1 together, we interpret the phrase a "place other than as designated by immigration officers" in § 1325(a)(1) as referring to any place other than immigration facilities at designated ports of entry, as contemplated by § 235.1(a).

In light of our interpretation of § 1325(a)(1), we reject Aldana and Suarez's argument that a place designated by immigration officers includes entire geographic areas listed in § 100.4(a) when the regulations do not identify a specific physical facility.  As explained above, § 100.4(a) identified ports of entry as locations where the INS has facilities, and can accept applications for admission.  Moreover, because

---

**⁶** The preamble to the 2009 revision states that the designation of ports of entry is within the authority of the U.S. Customs and Border Protection and is "generally governed by 19 C.F.R. § 101.3."  Removing References to Filing Locations, 74 Fed. Reg. at 26,934.  Section 101.3 designates ports of entry for the entry of merchandise and vessels, not aliens, and so is not applicable to the INA.  *See* 19 C.F.R. § 101.1.

§ 100.4(a) lists specific port facilities only in larger cities, the appellants' argument would lead to the "absurd [and] irrational result," *United States v. LKAV*, 712 F.3d 436, 440 (9th Cir. 2013), that an alien could enter anywhere in the United States that was not a large city, including along the entire San Diego border, without facing criminal penalties under § 1325(a)(1). We avoid giving such irrational interpretations to regulations where, as here, a more plausible interpretation exists. *Id.*[7]

B

In this case, there is no dispute that Aldana and Suarez did not enter the United States through a facility where immigration officials could accept applications for entry, which is the method for lawful entry permitted by § 235.1(a). Therefore, "viewing the evidence in the light most favorable to the prosecution, [a] rational trier of fact could have found" beyond a reasonable doubt that Aldana and Suarez attempted to enter the United States in "a place other than as designated by immigration officers," in violation of § 1325(a)(1). *See Roach*, 792 F.3d at 1144 (quoting *Duran*, 189 F.3d at 1078). Their convictions must stand.

**AFFIRMED**.

---

[7] Appellants also argue that even if the common meaning of the term "port of entry" is a port facility, the INS intended to give the term a specialized meaning, because § 100.4(a) occasionally capitalizes "Port of Entry" and lists geographic areas as well as facilities. Because we have concluded that the regulations use the term "port of entry" to mean a facility where an immigration official could accept an application, a definition that is consistent with the common usage of the term, we reject this argument.