**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,
  *Plaintiff-Appellee*,

v.

MANUEL MELGAR-DIAZ,
  *Defendant-Appellant.*

No. 20-50010

D.C. No.
3:19-mj-23798-
RNB-CAB-1

UNITED STATES OF AMERICA,
  *Plaintiff-Appellee*,

v.

JOAQUIN BENITO-MENDOZA,
  *Defendant-Appellant.*

No. 20-50011

D.C. No.
3:19-mj-23597-
RNB-CAB-1

OPINION

Appeal from the United States District Court
for the Southern District of California
Cathy Ann Bencivengo, District Judge, Presiding

Argued and Submitted May 12, 2021
Pasadena, California

Filed June 29, 2021

Before:  Jay S. Bybee and Daniel A. Bress, Circuit Judges,
and Kathleen Cardone,* District Judge.

Opinion by Judge Bress

---

## SUMMARY**

### Criminal Law

Affirming convictions for entering the United States at a time or place other than as designated by immigration officers in violation of 8 U.S.C. § 1325(a)(1), the panel held that § 1325(a)(1) does not violate the non-delegation doctrine, and is not unconstitutionally vague—facially or as applied.

---

## COUNSEL

Doug Keller (argued), Law Office of Doug Keller, San Diego, California, for Defendant-Appellant Manuel Melgar-Diaz.

Kara Hartzler, Federal Defenders of San Diego Inc., San Diego, California, for Defendant-Appellant Joaquin Benito-Mendoza.

---

* The Honorable Kathleen Cardone, United States District Judge for the Western District of Texas, sitting by designation.

** This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

Zachary J. Howe (argued), Assistant United States Attorney; Daniel E. Zipp, Chief, Appellate Section, Criminal Division; Robert S. Brewer, Jr., United States Attorney; United States Attorney's Office, San Diego, California; for Plaintiff-Appellee.

## OPINION

BRESS, Circuit Judge:

The defendants in this case pleaded guilty to entering the United States from Mexico at a time or place other than as designated by immigration officers, in violation of 8 U.S.C. § 1325(a)(1). Defendants argue that § 1325(a)(1) is an unconstitutional delegation of legislative power to immigration officials and is void for vagueness. We hold that these constitutional challenges fail.

I.

Manuel Melgar-Diaz, a Mexican citizen, crossed the border from Mexico in 2019. He did not enter at a designated port of entry. A border agent arrested Melgar-Diaz about five miles north of the U.S. border after the agent briefly chased him. In 2019, border agents also arrested Joaquin Benito-Mendoza, a Mexican citizen, after he entered the United States at a location other than a port of entry. Agents found Benito-Mendoza hiding in brush just north of the border, approximately eighteen miles from a port of entry.

Before a magistrate judge, the defendants pleaded guilty without plea agreements to misdemeanor illegal entry under 8 U.S.C. § 1325(a)(1). That statute punishes any alien who "enters or attempts to enter the United States at any time or

place other than as designated by immigration officers."
8 U.S.C. § 1325(a)(1). Both defendants were sentenced to
time served and were released.

Despite pleading guilty, defendants appealed their
convictions to the district court. They advanced various
constitutional challenges to their convictions, which the
district court rejected. Defendants appealed, and their cases
were consolidated for our review.

## II.

Although the defendants pleaded guilty, they may still
challenge the constitutionality of their statute of conviction
on appeal. *See Class v. United States*, 138 S. Ct. 798, 803
(2018); *United States v. Chavez-Diaz*, 949 F.3d 1202, 1207–
08 (9th Cir. 2020). Defendants in many § 1325(a)(1) cases
have raised the same constitutional arguments that the
defendants raise here, which district courts have repeatedly
rejected. *See, e.g.*, *United States v. Gonzalez-Pena*, 445 F.
Supp. 3d 1021, 1029–31 (S.D. Cal. 2020); *United States v.
Nunez-Soberanis*, 406 F. Supp. 3d 835, 839–41 (S.D. Cal.
2019). Reviewing de novo, *United States v. Laursen*,
847 F.3d 1026, 1031 (9th Cir. 2017), we agree. Section
1325(a)(1) does not violate the non-delegation doctrine, nor
is it unconstitutionally vague.

## A.

We begin with defendants' argument that § 1325(a)
unconstitutionally delegates legislative power. Article I of
the Constitution provides that "[a]ll legislative Powers
herein granted shall be vested in a Congress of the United
States." U.S. Const. art. I, § 1. The corollary of this grant
of power is the non-delegation doctrine, by which Congress
"may not transfer to another branch powers which are

strictly and exclusively legislative." *Gundy v. United States*, 139 S. Ct. 2116, 2123 (2019) (plurality opinion) (quotations omitted).

Under modern precedent, this is an exceedingly modest limitation. The Supreme Court has held that the non-delegation doctrine must be applied consistent with Congress's essential need and ability to direct the Executive to carry out legislative commands: "the Constitution does not 'deny to the Congress the necessary resources of flexibility and practicality that enable it to perform its functions.'" *Id.* (alterations omitted) (quoting *Yakus v. United States*, 321 U.S. 414, 425 (1944)). Thus, Congress "may confer substantial discretion on executive agencies to implement and enforce the laws." *Id.* (citing *Mistretta v. United States*, 488 U.S. 361, 372 (1989)).

Prevailing on a non-delegation challenge is thus a tall order. Under longstanding Supreme Court precedent, "a statutory delegation is constitutional as long as Congress 'lays down by legislative act an intelligible principle to which the person or body authorized to exercise the delegated authority is directed to conform.'" *Id.* (alterations omitted) (quoting *Mistretta*, 488 U.S. at 372). This means that "a delegation is permissible if Congress has made clear to the delegee 'the general policy' he must pursue and the 'boundaries of his authority.'" *Id.* at 2129 (alterations omitted) (quoting *Am. Power & Light Co. v. SEC*, 329 U.S. 90, 105 (1946)).

These standards are "not demanding." *Id.* The Supreme Court has therefore repeatedly turned down many non-delegation challenges, including in cases involving very broad conferrals of authority. *See, e.g.*, *Whitman v. Am. Trucking Ass'n*, 531 U.S. 457, 473–74 (2001); *Touby v. United States*, 500 U.S. 160, 166–67 (1991); *Yakus*, 321 U.S.

at 427.  In fact, "[o]nly twice in this country's history (and that in a single year) ha[s] [the Supreme Court] found a delegation excessive . . . ."  *Gundy*, 139 S. Ct. at 2129 (plurality opinion) (citing *A.L.A. Schechter Poultry Corp. v. United States*, 295 U.S. 495 (1935); *Panama Refin. Co. v. Ryan*, 293 U.S. 388 (1935)); *see also Gundy*, 139 S. Ct. at 2130–31 (Alito, J., concurring in the judgment).  The case before us does not present just the third occasion in which applying the rarely invoked non-delegation doctrine would be appropriate.

We return to the challenged provision, which punishes any alien who "enters or attempts to enter the United States at any time or place other than as designated by immigration officers."  8 U.S.C. § 1325(a)(1).  This is a longstanding prohibition that is routinely prosecuted in border districts. *See United States v. Aldana*, 878 F.3d 877, 880–81 (9th Cir. 2017) (tracing the history and origins of § 1325(a)(1) to 1917, with its modern language dating to 1929).

Defendants interpret § 1325(a)(1) to permit any immigration officer, with no governing standards, to designate the times and locations when aliens may lawfully enter the United States.  In their view, it is the immigration officers' choice of where to place the legal points of entry that creates the crime.  That choice, they claim, lacks any guiding principle because nothing would prevent immigration officers from designating either all or none of the border as a permissible place of entry.

Defendants misperceive both the statute and the nondelegation question.  Section 1325(a)(1) does not give immigration officials the power to create crimes.  Congress instead penalized a particular type of conduct: it is a crime to enter the United States unless an alien presents himself for inspection at an approved time and place.  Congress left for

the Executive Branch merely the interstitial task of determining those times and places, substantially similar to a law that prohibited crossing the street outside a crosswalk but delegated the power to decide where on the streets the crosswalks should be striped. Congress conferring that type of ministerial authority in § 1325(a)(1) does not present a non-delegation concern.

Under the non-delegation doctrine, "the degree of agency discretion that is acceptable varies according to the scope of the power congressionally conferred." *Whitman*, 531 U.S. at 475. For narrow, interstitial delegations of authority, "Congress need not provide any direction to the" Executive because "a certain degree of discretion, and thus of lawmaking, inheres in most executive or judicial action." *Id.* (quotations and alteration omitted). Indeed, these types of "feasibility" judgments are "often left to executive officials." *Gundy*, 139 S. Ct. at 2130 (plurality opinion).

In this case, by tasking the Executive with determining the times and places of lawful entry, Congress permissibly gave immigration officials "flexibility to deal with real-world constraints in carrying out [their] charge" to manage entry at the border. *Id.* Defendants' challenge, if accepted, would seemingly require us to invalidate many legislative schemes that similarly entrust to the Executive the authority to implement Congress's commands at the ground level.

Precedent plainly does not support such a sweeping limitation on Congress's prerogatives. In *Touby*, for example, the Supreme Court rejected a non-delegation challenge to a statute that gave the Attorney General authority temporarily to designate a drug as a controlled substance, and through that authority "promulgate regulations that contemplate criminal sanctions." 500 U.S. at 165–66. If the statute in *Touby*—which set forth a broad

"public safety" standard—"meaningfully constrain[ed] the Attorney General's discretion to define criminal conduct," *id.* at 166, then § 1325(a)(1) is clearly not an excessive delegation of power either.

But if anything, § 1325(a)(1) presents even fewer non-delegation concerns than either *Touby* or our crosswalk striping example. The Supreme Court has explained that "the same limitations on delegation do not apply 'where the entity exercising the delegated authority itself possesses independent authority over the subject matter.'" *Loving v. United States*, 517 U.S. 748, 772 (1996) (quoting *United States v. Mazurie*, 419 U.S. 544, 556–57 (1975)); *see also Youngstown Sheet & Tube Co. v. Sawyer*, 343 U.S. 579, 636 n.2 (1952) (Jackson, J., concurring) ("[T]he strict limitation upon congressional delegations of power to the President over internal affairs does not apply with respect to delegations of power in external affairs."); *Gundy*, 139 S. Ct. at 2137 (Gorsuch, J., dissenting) (similar).

That principle fits the statutory framework at issue here. In *United States ex rel. Knauff v. Shaughnessy*, 338 U.S. 537 (1950), the Supreme Court rejected a non-delegation challenge to a statute allowing the Executive to exclude aliens from the United States: "there is no question of inappropriate delegation of legislative power involved," the Court held, because "[t]he exclusion of aliens is a fundamental act of sovereignty" that "stems not alone from legislative power but is inherent in the executive power." *Id.* at 542. That broader observation necessarily applies to the much more circumscribed, interstitial judgments that immigration officials must make in designating the times and places of entry into the United States. *Cf. Loving*, 517 U.S. at 772–73 (explaining that when the Executive "possesses independent authority over the subject matter,"

Congress may give the Executive "broad discretion to prescribe rules on this subject").

Of course, to the extent that Congress needed to provide more of an intelligible principle in § 1325(a)(1), it did so. Considering the text of § 1325(a)(1) "in 'context' and in light of the statutory 'purpose,'" *Gundy*, 139 S. Ct. at 2126 (plurality opinion) (quoting *Nat'l Broad. Co. v. United States*, 319 U.S. 190, 214, 216 (1943)), it is obvious that § 1325(a)(1) does not cast immigration officials completely adrift when they designate times and places of entry.

Contrary to defendants' suggestion that immigration officials could designate for entry either the entire border or none of it, numerous laws presuppose the existence of definite points of entry, to allow for lawful travel and commerce and to maintain orderly operations at our borders. *See, e.g.*, 6 U.S.C. §§ 202, 211, 217(b)(3), 223(c); 8 U.S.C. §§ 1103(a)(5), 1151–1160, 1181–1189, 1225, 1752; 19 U.S.C. §§ 1459, 2075(g)(2). Designating all (or none) of the border as a place of entry would be in obvious tension with various statutory provisions, making them superfluous or difficult to comprehend. The government in this case understandably disclaims the unfettered discretion that defendants attribute to it, and the government's position finds ample support in the broader statutory scheme of which § 1325(a)(1) is but one part.

But even if we were limited to the text of § 1325(a)(1) alone, we would not find a non-delegation problem. Section 1325(a)(1) requires that immigration officials designate "time[s]" and "place[s]" for entry. This on its own provides an intelligible principle: immigration officials must create rules for the passage of people into the United States based on the criteria of location and timing. That provides sufficiently meaningful direction to the Executive to avoid

any non-delegation concerns. *Cf. Touby*, 500 U.S. at 166; *Mistretta*, 488 U.S. at 372–73. And that the Executive has created a network of border entry points and detailed rules for their operation shows that the standardless regime defendants warn of has not come to pass. *See, e.g.*, 8 C.F.R. §§ 100.4, 215.8, 231.1, 235.1(a), (f), (g)(1)–(2).

In sum, if § 1325(a)(1) is unconstitutional, "then most of Government is unconstitutional." *Gundy*, 139 S. Ct. at 2130 (plurality opinion). Consistent with Supreme Court precedent, § 1325(a)(1) does not violate the non-delegation doctrine.

B.

The defendants' vagueness challenge to § 1325(a)(1) fares no better. The Fifth Amendment's Due Process Clause "guarantees that ordinary people have fair notice of the conduct a statute proscribes" while "guard[ing] against arbitrary or discriminatory law enforcement." *Sessions v. Dimaya*, 138 S. Ct. 1204, 1212 (2018) (quotations omitted); *see also United States v. Hudson*, 986 F.3d 1206, 1210 (9th Cir. 2021); *Kashem v. Barr*, 941 F.3d 358, 369 (9th Cir. 2019). The defendants cannot show that § 1325(a)(1) provides unfair notice or produces arbitrary enforcement.

Defendants' as-applied vagueness challenge to § 1325(a)(1) easily fails. In evaluating whether a law provides constitutionally insufficient notice, "[w]e ask whether the law gives a person of ordinary intelligence fair notice of what is prohibited." *Kashem*, 941 F.3d at 371 (quotations omitted). Section 1325(a)(1) penalizes "enter[ing] the United States at any time or place other than as designated by immigration officers." In other words, entering the United States at "any place other than immigration facilities at designated ports of entry" that are

"staffed by immigration officials who can accept" applications for entry is not permitted. *Aldana*, 878 F.3d at 882. That proscription is clear. Here, both defendants were arrested in isolated areas miles away from any port of entry. Their conduct fell within the heartland of what § 1325(a)(1) prohibits. *See, e.g.*, *id.* at 882–83.

Nor can defendants invalidate § 1325(a)(1) as unconstitutionally vague based on an arbitrary enforcement theory. As applied to defendants, § 1325(a)(1) is "governed by constitutionally sufficient standards" and does not "lack any ascertainable standard for inclusion and exclusion." *Kashem*, 941 F.3d at 374 (quotations omitted). Defendants "cannot claim that an impermissibly vague statute has resulted in arbitrary enforcement [when] [their] conduct falls well within the provision's prohibited conduct." *United States v. Coscia*, 866 F.3d 782, 794 (7th Cir. 2017); *see also Farrell v. Burke*, 449 F.3d 470, 494 (2d Cir. 2006) (Sotomayor, J.) (noting that an as-applied arbitrary enforcement challenge fails if "the conduct at issue falls within the core of the statute's prohibition, so that the enforcement before the court was not the result of the unfettered latitude that law enforcement officers and factfinders might have in other, hypothetical applications of the statute"). The defendants have not shown that the government arbitrarily applied § 1325(a)(1) as to them. *See Kashem*, 941 F.3d at 374. Their arbitrary enforcement claim is instead a reprise of their non-delegation theory premised on supposedly standardless congressional directives, which fails for the reasons stated above.

The defendants also purport to bring a facial challenge to § 1325(a)(1). But even assuming defendants—who engaged in clearly prohibited conduct—could bring this type of challenge, *see Hudson*, 986 F.3d at 1214 n.3; *Kashem*,

941 F.3d at 375–77, it would fail.  Once again, defendants largely reframe in vagueness terms their same non-delegation theories.   Having rejected defendants' main argument that Congress gave immigration officers indeterminate guidance for designating times and places of entry, we easily reject the suggestion that § 1325(a)(1)—a longstanding     and     routinely     used     provision—is unconstitutionally vague on its face.  The defendants' facial vagueness challenge to § 1325(a)(1) must fail, when as here, the statute "provides both sufficient notice as to what is prohibited and sufficient guidance to prevent against arbitrary enforcement."  *United States v. Kuzma*, 967 F.3d 959, 970 (9th Cir. 2020).

**AFFIRMED.**