**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

| | |
|---|---|
| DAISEY TRUST, by and through its trustee Eddie Haddad; CAPE JASMINE CT. TRUST, by and through its trustee, Eddie Haddad; SATICOY BAY LLC, SERIES 10007 LIBERTY VIEW, | No. 24-6433<br><br>D.C. No.<br>2:23-cv-00978-APG-EJY |
| *Plaintiffs - Appellants*, | |
| v. | OPINION |
| FEDERAL HOUSING FINANCE AGENCY; WILLIAM J. PULTE,* in his official capacity as the Director of the Federal Housing Finance Agency, | |
| *Defendants - Appellees*. | |

Appeal from the United States District Court
for the District of Nevada
Andrew P. Gordon, Chief District Judge, Presiding

Argued and Submitted October 8, 2025
Las Vegas, Nevada

---

* We have substituted William J. Pulte as Defendant-Appellee pursuant to Federal Rule of Appellate Procedure 43(c).

Filed January 2, 2026

Before: Mark J. Bennett, Gabriel P. Sanchez, and Holly A. Thomas, Circuit Judges.

Opinion by Judge H.A. Thomas

**SUMMARY**[**]

**Federal Housing Finance Agency**

The panel affirmed the district court's dismissal with prejudice of plaintiffs' amended complaint alleging that the funding mechanism for the Federal Housing Finance Agency ("FHFA"), as established by the Housing and Economic Recovery Act of 2008 ("Recovery Act"), violates the Appropriations Clause and the nondelegation doctrine.

Plaintiffs purchased properties in Nevada that were encumbered by a deed of trust owned by the Federal National Mortgage Association ("Fannie Mae") or the Federal Home Loan Mortgage Corporation ("Freddie Mac"). They sought to prevent the foreclosure of their properties.

Congress enacted the Recovery Act in response to fears that Fannie Mae and Freddie Mac's troubling financial condition would imperil the national economy. The Recovery Act created the FHFA, an independent agency

---

[**] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

tasked with regulating Fannie Mae and Freddie Mac. The FHFA is not funded through the ordinary appropriations process, but rather from the assessments it imposes on the entities it regulates.

The panel rejected the FHFA's argument that plaintiffs lacked Article III standing to pursue their federal claims. Plaintiffs plausibly alleged an injury in fact when the FHFA, acting through Fannie Mae or Freddie Mac, foreclosed upon their properties. Plaintiffs also plausibly alleged that their injury is traceable to the FHFA's conduct. Finally, plaintiffs' alleged injury is judicially redressable.

Rejecting plaintiffs' Appropriations Clause challenge, the panel held that the funding mechanism for the FHFA, as established by the Recovery Act, is consistent with the rule articulated in *Consumer Financial Protection Bureau v. Community Financial Services Association of America, Limited*, 601 U.S. 416 (2024). The funding mechanism identifies both a source of funds—the annual assessments the FHFA imposed upon Fannie Mae and Freddie Mac—and a purpose for the expenditure of those funds—reasonable costs and expenses of the FHFA.

The panel also held that the FHFA's funding mechanism does not violate the nondelegation doctrine. The plain text of the Recovery Act contains an intelligible principle that governs the FHFA's ability to collect assessments from the regulated entities.

**COUNSEL**

Jordan T. Smith (argued) and Brianna Smith, Pisanelli Bice
PLLC, Las Vegas, Nevada, for Plaintiffs-Appellants.

Michael A.F. Johnson (argued) and Dirk C. Phillips, Arnold
& Porter Kaye Scholer LLP, Washington, D.C.; Leslie B.
Hart, Fennemore Craig PC, Reno, Nevada; for Defendants-
Appellees.

**OPINION**

H.A. THOMAS, Circuit Judge:

Plaintiffs Daisey Trust, Cape Jasmine Court Trust
("Cape Jasmine"), and Saticoy Bay LLC, Series 10007
Liberty View ("Saticoy Bay") sued the Federal Housing
Finance Agency ("FHFA") and its Director, alleging that the
FHFA's funding mechanism, as established by the Housing
and Economic Recovery Act of 2008 ("Recovery Act"),
violates the Appropriations Clause and the nondelegation
doctrine. The district court dismissed Plaintiffs' amended
complaint with prejudice and without leave to amend, ruling
that the FHFA's funding mechanism is constitutional. We
agree with the district court and affirm.

I.

A.

In 2012, Daisey Trust purchased a property located on
Newburg Avenue in North Las Vegas, Nevada. The same
year, Cape Jasmine purchased a property located on Desert
Pond Avenue in Henderson, Nevada. In 2013, Saticoy Bay

purchased a property located on Liberty View Way in Las Vegas, Nevada. At the time of purchase, each of the properties was encumbered by a deed of trust owned by the Federal National Mortgage Association ("Fannie Mae") or the Federal Home Loan Mortgage Corporation ("Freddie Mac").

Daisey Trust, Cape Jasmine, and Saticoy Bay each sued Fannie Mae's or Freddie Mac's loan servicer in state court, seeking to extinguish the respective deed of trust and to quiet title. Each Plaintiff ultimately lost. The Newburg Avenue, Desert Pond Avenue, and Liberty View Way properties continued to be encumbered by Fannie Mae's or Freddie Mac's respective liens until deed-of-trust foreclosure proceedings were held between 2022 and 2024.

## B.

We pause here for a bit of background. "Congress created the Federal National Mortgage Association (Fannie Mae) in 1938 and the Federal Home Loan Mortgage Corporation (Freddie Mac) in 1970 to support the Nation's home mortgage system." *Collins v. Yellen*, 594 U.S. 220, 228 (2021). Fannie Mae and Freddie Mac "operate under congressional charters as for-profit corporations owned by private shareholders." *Id.* "Their primary business is purchasing mortgages, pooling them into mortgage-backed securities, and selling them to investors." *Id.*

In 2008, during the nation's housing crisis, Congress enacted the Recovery Act in response to fears that Fannie Mae and Freddie Mac's "troubling financial condition would imperil the national economy." *Id.* at 226; *see also* Housing and Economic Recovery Act of 2008, Pub. L. No. 110-289, 122 Stat. 2654; 12 U.S.C. § 4501 *et seq.* The Recovery Act "created the [FHFA], 'an independent agency' tasked with

regulating the companies and, if necessary, stepping in as their conservator or receiver." *Collins*, 594 U.S. at 226–27 (quoting 12 U.S.C. §§ 4511, 4617). "The Agency is tasked with supervising nearly every aspect of the companies' management and operations." *Id.* at 230. Pursuant to these powers, "[i]n September 2008, . . . [the] FHFA's Director placed Fannie Mae and Freddie Mac into conservatorship," where they remain today. *Fed. Home Loan Mortg. Corp. v. SFR Invs. Pool 1, LLC*, 893 F.3d 1136, 1143 (9th Cir. 2018). By placing Fannie Mae and Freddie Mac into conservatorship, the FHFA succeeded their "rights, titles, powers, and privileges . . . with respect to [their] assets." 12 U.S.C. § 4617(b)(2)(A)(i).

"[T]he FHFA is not funded through the ordinary appropriations process. Rather, the Agency's budget comes from the assessments it imposes on the entities it regulates . . . ." *Collins*, 594 U.S. at 231. Pursuant to the Recovery Act, "[t]he [FHFA's] Director shall establish and collect from the regulated entities annual assessments in an amount not exceeding the amount sufficient to provide for reasonable costs (including administrative costs) and expenses of the Agency." 12 U.S.C. § 4516(a). These assessments "shall not exceed the amounts sufficient to provide for the costs and expenses" of the four categories of expenses outlined in subsection (a), *id.* § 4516(b)(2), which include expenses of examinations, expenses of obtaining reviews and credit assessments, and amounts necessary to maintain a working capital fund, *id.* § 4516(a)(1)–(3). "[T]he Director shall remit to each regulated entity any amount of assessment collected from such regulated entity that . . . is in excess of the amount the Director deems necessary to maintain a working capital fund." *Id.* § 4516(e).

The Recovery Act also imposes reporting and auditing requirements on the FHFA. *See id.* § 4516(g)–(h). The FHFA's Director must provide to the Office of Management and Budget "financial operating plans and forecasts" and "quarterly reports of the Agency's financial condition and results of operations," *id.* § 4516(g)(1), and to the Comptroller General "an assertion as to the effectiveness of the internal controls that apply to financial reporting by the Agency," *id.* § 4516(g)(4). The Director must also prepare an annual statement of "assets and liabilities and surplus or deficit;" "income and expenses;" and "sources and application of funds." *Id.* § 4516(g)(2). The Comptroller General "shall annually audit the financial transactions of the Agency" and "submit to the Congress a report of each annual audit." *Id.* § 4516(h)(1)–(2).

## C.

Facing the prospect of Fannie Mae's imminent foreclosure upon the Newburg Avenue property, in June 2023, Daisey Trust sued the FHFA and its Director and filed a motion for a temporary restraining order and a preliminary injunction preventing the foreclosure. Daisey Trust also filed an emergency motion to stay foreclosure in September 2023. The district court denied Daisey Trust's motions.

In November 2023, Cape Jasmine and Saticoy Bay were added as plaintiffs to Daisey Trust's lawsuit. That same month, Plaintiffs filed their first amended complaint on behalf of a putative class, alleging violations of the Appropriations Clause and nondelegation doctrine, as well as a state law wrongful foreclosure claim. They argued that the FHFA lacked authority to foreclose on their properties because the FHFA's funding mechanism, as established by the Recovery Act, violates the Appropriations Clause and

nondelegation doctrine. The FHFA moved to dismiss the suit based on lack of standing, claim preclusion, lack of subject matter jurisdiction, and failure to state a claim.

In September 2024, the district court granted the FHFA's motion to dismiss. *See Daisey Tr. v. Fed. Hous. Fin. Agency*, No. 2:23-CV-00978-APG-EJY, 2024 WL 4267792, at *1–12 (D. Nev. Sep. 20, 2024). The district court determined that Plaintiffs had standing to pursue their claims against the FHFA, but that Plaintiffs' claims failed on the merits. *See id.* at *4–11. As to the Appropriations Clause, the district court determined that the Recovery Act met the requirements set forth in the Supreme Court's decision in *Consumer Financial Protection Bureau v. Community Financial Services Association of America, Limited*, 601 U.S. 416 (2024) ("*CFSA*"), because the Recovery Act identified the funding source and purpose for the FHFA. *See id.* at *7–10. As to the nondelegation doctrine, the district court determined that the FHFA's limitation to "reasonable costs" in the amount of its assessments was an "intelligible principle" and rejected Plaintiffs' argument that the Recovery Act grants the FHFA "standardless authority."[1] *Id.* at *10–11. The district court also denied Plaintiffs' motion for leave to amend on the ground that amendment would be futile. *See id.* at *11. Plaintiffs timely appealed.

II.

We have jurisdiction under 28 U.S.C. § 1291. "We review a district court's determination that a plaintiff has standing de novo." *Am. Encore v. Fontes*, 152 F.4th 1097,

---

[1] The district court also determined that Plaintiffs' wrongful foreclosure claim under Nevada state law failed on the merits because it was predicated on the constitutional violations alleged in Plaintiffs' federal claims. *See id.* at *11. Plaintiffs do not appeal this decision.

1109 (9th Cir. 2025). "We review dismissals for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6) de novo and may affirm on any ground supported by the record." *Sodha v. Golubowski*, 154 F.4th 1019, 1032 (9th Cir. 2025) (quoting *Hansen v. Musk*, 122 F.4th 1162, 1168 (9th Cir. 2024)). "We review the denial of leave to amend a complaint for abuse of discretion, but review de novo the futility of amendment." *Schwartz v. Miller*, 153 F.4th 918, 926 (9th Cir. 2025).

## III.

As a preliminary matter, we reject the FHFA's argument that Plaintiffs lack Article III standing to pursue their federal claims. "[T]o satisfy Article III's standing requirements, a plaintiff must show (1) it has suffered an 'injury in fact' that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Jones v. L.A. Cent. Plaza LLC*, 74 F.4th 1053, 1057 (9th Cir. 2023) (alteration in original) (quoting *Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167, 180–81 (2000)). "Where, as here, a case is at the pleading stage, the plaintiff must 'clearly . . . allege facts demonstrating' each element." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016) (alteration in original) (quoting *Warth v. Seldin*, 422 U.S. 490, 518 (1975)).

Plaintiffs have plausibly alleged an injury in fact. The FHFA, acting through one of its conservatees, Fannie Mae or Freddie Mac, has foreclosed upon their properties. *See, e.g.*, *FDA v. All. for Hippocratic Med.*, 602 U.S. 367, 381 (2024) (noting that an "injury in fact can be . . . a monetary

injury" or "an injury to one's property"); *Biden v. Nebraska*, 600 U.S. 477, 489 (2023) (explaining that "the plaintiff must have suffered an injury in fact—a concrete and imminent harm to a legally protected interest, like property or money"). Such foreclosures are "concrete and particularized" and "actual or imminent" invasions of Plaintiffs' property interests. *Spokeo*, 578 U.S. at 339 (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992)). And, indeed, the FHFA does not meaningfully dispute that Plaintiffs have plausibly alleged an injury in fact.

Plaintiffs have also plausibly alleged that their injury is traceable to the FHFA's conduct. The FHFA argues that Plaintiffs' alleged injury is self-inflicted because Plaintiffs decided "to purchase investment properties encumbered by federally protected liens for pennies on the dollar and then not to pay off the underlying defaulted loans while Plaintiffs profited." The FHFA claims that these actions—rather than "any feature of [the] FHFA's funding mechanism"—caused any harm Plaintiffs experienced. The FHFA further argues that Plaintiffs' injury is not traceable to the FHFA's actions because, "irrespective even of [the] FHFA's continued existence," Fannie Mae, Freddie Mac, and their loan servicers "would proceed with foreclosures on [Plaintiffs'] properties." The FHFA notes that Fannie Mae and Freddie Mac—not the FHFA—operate "day-to-day foreclosure activity" and fund that activity through revenues collected in their own course of business.

The Supreme Court's decision in *Collins v. Yellen* forecloses the FHFA's arguments. In *Collins*, the Supreme Court made clear that "the relevant inquiry is whether the plaintiffs' injury can be traced to allegedly unlawful conduct of the defendant, not to the provision of law that is

challenged." 594 U.S. at 243 (quotations omitted). Here, Plaintiffs allege that the FHFA has exercised unlawfully delegated authority and expended unlawfully appropriated funds to foreclose upon their properties. This allegation is sufficient under *Collins* to establish traceability.

Finally, Plaintiffs' alleged injury is judicially redressable. "If a defendant's action causes an injury, enjoining the action or awarding damages for the action will typically redress that injury." *All. for Hippocratic Med.*, 602 U.S. at 381. Plaintiffs' request for declaratory, injunctive, and compensatory relief is sufficient to meet that standard. *See Collins*, 594 U.S. at 243.

IV.

A.

We turn next to the merits of Plaintiffs' claims, beginning with their Appropriations Clause challenge. The Appropriations Clause provides that "[n]o Money shall be drawn from the Treasury, but in Consequence of Appropriations made by Law." U.S. CONST. art. I, § 9, cl. 7. "Under the Appropriations Clause, an appropriation is simply a law that authorizes expenditures from a specified source of public money for designated purposes." *CFSA*, 601 U.S. at 424.

In *CFSA*, the Supreme Court considered a funding mechanism for the Consumer Financial Protection Bureau ("CFPB") analogous to that at issue here. *See id.* at 421–23. As with the FHFA, Congress "provide[d] the [CFPB] a standing source of funding outside the ordinary annual appropriations process." *Id.* at 422. Specifically, "Congress authorized the Bureau to draw from the Federal Reserve System the amount its Director deems 'reasonably necessary

to carry out' the Bureau's duties, subject only to an inflation-adjusted cap." *Id.* at 421 (quoting 12 U.S.C. § 5497(a)(1) and also citing § 5497(a)(2)). The plaintiffs in *CFSA* argued that this statute "usurp[ed] Congress's role in the appropriation of federal funds" by allowing the CFPB to take "federal money without an appropriations act." *Id.* at 424. They also asserted that the statute "allow[ed] the agency to indefinitely choose its own level of annual funding, subject only to an illusory cap." *Id.* at 426.

The Supreme Court rejected the plaintiffs' arguments. The Court held that "[b]ased on the Constitution's text, the history against which that text was enacted, and congressional practice immediately following ratification, . . . appropriations need only identify a source of public funds and authorize the expenditure of those funds for designated purposes to satisfy the Appropriations Clause." *Id.* The Court explained that: (1) "At the time the Constitution was ratified, . . . at a minimum, appropriations were understood as a legislative means of authorizing expenditure from a source of public funds for designated purposes," *id.* at 427; (2) "the origins of the Appropriations Clause confirm that appropriations needed to designate particular revenues for identified purposes," *id.* at 431; and (3) early appropriations post-ratification "displayed significant variety in their structure" but "adhered to the minimum requirements of an identifiable source of public funds and purpose," *id.* at 434. The Court thus determined that the CFPB's "funding statute contains the requisite features of a congressional appropriation" because it "authorizes the Bureau to draw public funds from a particular source" and "specifies the objects for which the Bureau can use those funds." *Id.* at 435.

The funding mechanism for the FHFA, as established by the Recovery Act, is entirely consistent with the rule articulated in *CFSA*. It identifies both a source of funds—the annual assessments the FHFA imposes upon Fannie Mae and Freddie Mac—and a purpose for the expenditure of those funds—"reasonable costs (including administrative costs) and expenses of the Agency." 12 U.S.C. § 4516(a).

Plaintiffs nevertheless argue that the FHFA's funding mechanism violates the Appropriations Clause because the Recovery Act sets "no cap or ascertainable limit on the amount [the] FHFA can extract and spend from the regulated entities." They assert that an appropriation requires a certain sum of money, and that the Supreme Court in *CFSA* "stressed the importance of the statutory cap." Plaintiffs are incorrect.

It is true that the Court noted the existence of a funding cap when describing the funding mechanisms for the CFPB and the Post Office. *See* 601 U.S. at 434–35. It is also true that—in rejecting the argument that the CFPB, "rather than Congress, decides the amount of annual funding that it draws from the Federal Reserve System"—the Court stated that "[t]he only sense in which the Bureau decides its own funding . . . is by exercising its discretion to draw less than the statutory cap." *Id.* at 436. The Court also observed that "'sums not exceeding' appropriations . . . were commonplace immediately after the founding." *Id.*

But as the Supreme Court emphasized, the Appropriations Clause grants Congress a "wide range of discretion" to devise appropriations with "significant variety in their structure." *Id.* at 431, 434. The Court discussed two founding-era appropriations—the Customs Service and the Post Office—to illustrate those "flexible approaches to

appropriations." *Id.* at 433. Congress, for example, "opted for a fee-based model" to fund the Customs Service, in which customs collectors were compensated from the fees they collected and the duties they raised within their districts. *Id.* Congress "adopted a similarly open-ended funding scheme for the Post Office," in which the Postmaster General funded the Post Office through the Office's own revenues and compensated deputy postmasters "subject to an upper limit." *Id.* at 434.

The Court's discussion in *CFSA* makes clear that, to satisfy the Appropriations Clause, Congress need only specify a source and purpose for the expenditure of funds. The Court's historical analysis supports that conclusion: while "[e]arly appropriations displayed significant variety in their structure[,] [e]ach . . . adhered to the minimum requirements of an identifiable source of public funds and purpose." *Id.* The Court's ultimate holding that the Bureau's funding statute satisfied the Appropriations Clause because it "authorizes the Bureau to draw public funds from a particular source" and "specifies the objects for which the Bureau can use those funds" is also consistent with this conclusion. *Id.* at 435. As the Court explained, "[a]lthough there may be other constitutional checks on Congress' authority to create and fund an administrative agency, specifying the source and purpose is all the control the Appropriations Clause requires." *Id.* at 441. Nothing in the Court's decision suggests that we may expand upon these requirements.

## B.

We next consider Plaintiffs' argument that the FHFA's funding mechanism violates the nondelegation doctrine. We conclude that it does not. Congress "may confer substantial

discretion on executive agencies to implement and enforce the laws." *Gundy v. United States*, 588 U.S. 128, 135 (2019) (plurality opinion). But the nondelegation doctrine "bars Congress from transferring its legislative power to another branch of Government." *Id.* at 132. "The constitutional question is whether Congress has supplied an intelligible principle to guide the delegee's use of discretion." *Id.* at 135.

The plain text of the Recovery Act contains an intelligible principle that governs the FHFA's ability to collect assessments from the regulated entities: an "amount sufficient to provide for reasonable costs." 12 U.S.C. § 4516(a). Although Plaintiffs argue that the Recovery Act lacks any intelligible principle to justify the delegation of authority to the FHFA, the Supreme Court has repeatedly upheld similar statutes with "broad terms" against constitutional challenges. *United States v. Pheasant*, 129 F.4th 576, 580 (9th Cir. 2025); *see also, e.g.*, *Sunshine Anthracite Coal Co. v. Adkins*, 310 U.S. 381, 398–99 (1940) ("just and reasonable" rates); *Nat'l Broad. Co. v. United States*, 319 U.S. 190, 216–17 (1943) ("public interest, convenience, or necessity"); *Yakus v. United States*, 321 U.S. 414, 423, 427 (1944) ("fair and equitable" prices); *Whitman v. Am. Trucking Ass'ns*, 531 U.S. 457, 472–76 (2001) ("requisite to protect the public health"). And we have described "[t]he requirement that Congress set out an 'intelligible principle' to constrain executive discretion" as "'an exceedingly modest limitation.'" *Pheasant*, 129 F.4th at 579 (quoting *United States v. Melgar-Diaz*, 2 F.4th 1263, 1266 (9th Cir. 2021)).

We also reject Plaintiffs' argument that the FHFA's "Director has unfettered discretion to collect whatever amounts she thinks are needed." We recently considered—and rejected—a similar claim in *Pheasant*, where we

reviewed a nondelegation challenge to Section 303(a) of the Federal Land Policy and Management Act of 1976 ("FLPMA"). *See id.* Section 303(a) empowers the Secretary of the Interior to "issue regulations necessary to implement the provisions of [the FLPMA] with respect to the management, use, and protection of the public lands, including the property located thereon." *Id.* (alteration in original) (quoting 43 U.S.C. § 1733(a)). The plaintiffs in *Pheasant* argued that "something more than an intelligible principle is required because [the Bureau of Land Management's] mission provides no inherent limitation on the scope of its regulations." *Id.* at 582. But we held that Section 303(a) "easily satisfies the 'intelligible principle' test" because the statute specifies the Secretary's responsibilities and does not permit "the Secretary to issue any regulation he wishes with a colorable connection to the use of public lands." *Id.* at 580–81. The same is true of the Recovery Act: far from conferring upon the FHFA the plenary authority to take any actions it wishes, the Director is constrained to collecting an "amount sufficient to provide for reasonable costs." 12 U.S.C. § 4516(a).

## V.

"Leave to amend may be denied if the proposed amendment is futile or would be subject to dismissal." *Hunter v. U.S. Dep't of Educ.*, 115 F.4th 955, 971 (9th Cir. 2024) (quoting *Wheeler v. City of Santa Clara*, 894 F.3d 1046, 1059 (9th Cir. 2018)). Plaintiffs argue that "the mechanism by which [the] FHFA funds foreclosures is unconstitutional and thus [Plaintiffs] can state a set of facts entitling them to relief" should we decline to entirely reverse the district court. But Plaintiffs have not stated a claim, and the parties have already addressed the impact of *CFSA*—which controls the Appropriations Clause issue—in

supplemental briefing before the district court. *See Parents for Priv. v. Barr*, 949 F.3d 1210, 1239 (9th Cir. 2020) ("[B]ecause Plaintiffs have not shown that any new factual allegations could alter these conclusions based on settled precedent, amendment would be futile."). Our review today only "confirms that the record clearly dictated the futility of amendment and the district court's decision." *Laws. for Fair Reciprocal Admission v. United States*, 141 F.4th 1056, 1074 (9th Cir. 2025) (quotations and alterations omitted).

## VI.

For the reasons discussed above, Plaintiffs have failed to state a claim upon which relief may be granted. As we have also explained, amendment would be futile. The district court's judgment is therefore **AFFIRMED**.